# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

_____

THE CHICAGO FAUCET SHOPPE, INC., on behalf of itself and all others similarly situated,

          Plaintiff,

   v.

NESTLÉ WATERS NORTH AMERICA INC.,

          Defendant.
_____

Civil Action No. 1:12-cv-8119


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

        Sarah R. Wolff
        David Z. Smith
        REED SMITH LLP
        10 South Wacker Drive - 40th Floor
        Chicago, Illinois 60606-7507
            *and*
        Jeffrey M. Garrod
        (admitted *pro hac vice*)
        ORLOFF, LOWENBACH,
        STIFELMAN & SIEGEL, P.A.
        101 Eisenhower Parkway, Suite 400
        Roseland, New Jersey 07068-1097
        *Attorneys for Defendant*

453851

**PRELIMINARY STATEMENT**

This Brief is submitted on behalf of defendant Nestlé Waters North America Inc. ("NWNA") in support of its motion to dismiss the complaint of putative class action plaintiff The Chicago Faucet Shoppe, Inc. ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff alleges that NWNA violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA") and was unjustly enriched, having misled Plaintiff by failing to disclose that NWNA's Ice Mountain® 5-gallon bottled water is "resold municipal tap water." [Doc. 1, ¶57].

This Court should dismiss the complaint for lack of subject matter jurisdiction, as Plaintiff does not possess Article III constitutional standing to proceed in this Court. Plaintiff has not alleged, and indeed cannot allege, any facts showing an essential element of Article III standing: a causal connection between its purchase of NWNA's Ice Mountain® 5-gallon bottled water <u>in 2008</u> and NWNA's alleged misleading omission on its website <u>in 2012</u>, as to the identity of the source of its Ice Mountain® 5-gallon bottled water coming from a municipal water source. The failure to plead facts showing that Plaintiff has Article III standing is fatal to its complaint.

Plaintiff's state law claims should also be dismissed as a matter of law because they are expressly preempted by the Federal Food, Drug & Cosmetic Act ("FDCA"), which has vested the Food & Drug Administration ("FDA") with the regulatory authority to prescribe required disclosures as to the standard of identity and sources of bottled water. As the Seventh Circuit Court of Appeals has held, the FDCA prohibits a plaintiff from invoking the ICFA to impose marketing and labeling disclosure requirements that are "not identical to" FDA regulations. By claiming that NWNA violated state law by failing to disclose the identity of the source of Ice Mountain® 5-gallon bottled water as a municipal water source, Plaintiff is impermissibly

453851

attempting to impose a requirement as to the identity of the source of bottled water that has been considered and rejected by the FDA. Moreover, as NWNA's labeling practice is specifically authorized by federal law, it is exempt from liability under the ICFA's "safe harbor" provision.

Plaintiff's state law claims are fatally flawed in other respects. First, the ICFA claim is barred by its three-year statute of limitations because it is based upon a transaction involving Plaintiff's purchase of Ice Mountain® 5-gallon bottles of water that occurred in 2008. Second, Plaintiff's unjust enrichment claim is not viable because there is an express contract. Third, both claims are barred by Illinois' Uniform Commercial Code, which bars any remedy to a buyer, such as Plaintiff, who accepted goods without providing timely notice of their alleged nonconformity. Fourth, both claims are barred by the voluntary payment doctrine, as Plaintiff cannot complain after it voluntarily paid, without objection, at least 30 invoices for Ice Mountain® 5-gallon bottled <u>drinking</u> <u>water</u> over the past four years.

Plaintiff's consumer fraud claim is nothing more than a breach of contract claim that the Illinois Supreme Court has held is not actionable under the ICFA, absent deception. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 1995) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act. * * * We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract.").

Plaintiff has not satisfied its burden of alleging facts showing actual deception, without which it cannot state a plausible claim for relief under the ICFA. Excerpting language from NWNA's website as it appeared in August 2012, the complaint levels conclusory allegations that NWNA intended to deceive Plaintiff in 2008, without alleging a single fact showing that Plaintiff

actually read and was itself deceived by a specific misrepresentation or nondisclosure made by NWNA in 2008, when Plaintiff contracted to purchase Ice Mountain® 5-gallon bottled water. Nor has Plaintiff pled its ICFA claim with the particularity demanded by Rule 9(b). Without these facts, Plaintiff's ICFA claim cannot stand.

## RELEVANT ALLEGATIONS OF THE COMPLAINT

Plaintiff is an Illinois corporation with its principal place of business in Chicago, Illinois. [Doc. 1 (¶3)]. NWNA is a Delaware corporation with its principal place of business in Stamford, Connecticut. [*Id.* at ¶4]. Among the Ice Mountain® bottled water products sold by NWNA are Ice Mountain® 5-gallon bottles of water. [*Id.* at ¶¶18, 22].

Plaintiff alleges that after an unnamed officer viewed an Ice Mountain® website, Plaintiff entered into a contract in 2008 to purchase Ice Mountain® 5-gallon bottles of water. [*Id.* at ¶¶34-35]. Nowhere in its complaint does Plaintiff allege that it actually read the NWNA 2008 website or was deceived by any misrepresentation or nondisclosure made by NWNA in 2008. Plaintiff alleges as part of its ICFA cause of action that it "received monthly billing invoices for the 5-gallon bottles that stated 'Ice Mountain® Natural Spring Water….'"[1] [*Id.* at ¶37].

---

[1] A complete set of the NWNA invoices to Plaintiff is annexed as Exhibit "D." The Court may consider these documents in support of NWNA's 12(b)(1) motion. *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir. 1993). This Court may also consider these documents in support of NWNA's 12(b)(6) motion as Plaintiff's complaint not only specifically refers to these invoices without annexing them [Doc. 1 (¶¶37, 59)], but quotes from these invoices and alleges that they misrepresent the source of the 5-gallon bottles as spring water [*id.* at ¶37]. *See Wright v. Assoc. Ins. Cos., Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994) ("It is well-settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss, … if they are referred to in the plaintiff's complaint and are central to his claim.'"). The incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting the defendant's Rule 12(b)(6) motion into one for summary judgment and serves to prevent a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Brownmark Films, L.L.C. v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012). Importantly, "when a document contradicts a complaint to which it is attached, the document's facts or

*(continued on next page)*

According to the complaint, another unidentified officer of Plaintiff was informed by an unnamed person during a telephone call in July 2012 "that the Ice Mountain® 5-gallon bottles do not contain 100% natural spring water but instead contain resold municipal tap water." [*Id.* at ¶38]. Plaintiff then ceased purchasing the product. [*Id.* at ¶39].

Referring to webpages that are undated or dated August 2012 [*id.* at Exh. "B"], Plaintiff alleges that NWNA's and the Ice Mountain® websites promise that spring water can be delivered to your home and office in 5-gallon bottles [*id.* at ¶¶29-30], but fail to disclose that the "Ice Mountain® 5-gallon jugs actually contain resold municipal tap water and not '100% Natural Spring Water.'" [*Id.* at ¶31]. Plaintiff contends "consumers can't view the actual product [the 5-gallon bottle] before purchasing it" [*id.* at ¶28] and that it "would not have purchased the 5-gallon bottles or paid the purchase price of the 5-gallon bottles that it did, had it known that these bottles contained resold municipal tap water and not 100% natural spring water." [*Id.* at ¶40].

## ARGUMENT

### I. Plaintiff Lacks Article III Standing, As It Has Not Alleged A Causal Connection Between NWNA's Conduct And Plaintiff's Claimed Injury-in-Fact

To present a justiciable controversy to this Article III Court, Plaintiff must satisfy the requirements of constitutional standing. *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 949 (7th Cir. 2005). Absent standing, Plaintiff's claims must be dismissed for lack of jurisdiction. *Id.*

Plaintiff bears the burden of alleging facts showing that it has standing. *Id.* The allegations must be particular to Plaintiff and cannot be generalized among a class of people or a market generally. *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422

---

*(continued from previous page)*
allegations trump those in the complaint." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004).

F.3d 490, 496 (7th Cir. 2005). Consequently, Plaintiff cannot piggyback on the claims of putative class members. *Walters v. Edgar*, 163 F.3d 430, 437 (7th Cir. 1998) (vacating all prior proceedings because the named plaintiff in the class action did not have standing at the commencement of the suit).

Standing to pursue claims in this Court requires Plaintiff to allege facts showing (i) an actual injury-in-fact; (ii) a causal connection between the injury and NWNA's conduct sufficient to show that the injury is "fairly traced to the challenged action of the defendant"; and (iii) that the prayed-for remedy will likely redress the injury. *Scanlan v. Eisenberg*, 669 F.3d 838, 841-842 (7th Cir. 2012). "To satisfy Article III's 'traceability' prong, a plaintiff must establish 'links in the chain of causation between the complaint of injury and the challenged conduct.'" *Lateef v. Pharmavite LLC*, No. 12-cv-5611, 2012 WL 5269619, at 8 (N.D. Ill. Oct. 24, 2012) (quoting *Sanner v. Board of Trade*, 62 F.3d 918, 923 (7th Cir. 1995) (quoting *Allen v. Wright*, 468 U.S. 737, 759 (1984))).

Plaintiff does not have Article III standing, as it has failed to allege well-pleaded facts showing a causal connection between its claimed injury and NWNA's conduct. Article III standing requires Plaintiff to allege that it read or viewed the <u>actual</u> materials that it contends were misleading in violation of the ICFA, and facts showing how it was actually misled by the misrepresentation or omission. *See, e.g., Wiegel v. Stork Craft Mfr., Inc.*, No. 09-cv-7417, ___ F. Supp. 2d ___, 2012 WL 2130910 (N.D. Ill. June 6, 2012). In *Wiegel*, this Court dismissed an ICFA claim for lack of Article III standing based on Wiegel's failure to allege facts showing that she had read and actually been misled by a recall notice. Wiegel had alleged that a recall notice, only advising customers that they could request a repair kit, was deceptive because consumers could have alternatively requested a refund for their unsafe drop-side crib. This Court held that

-5-

Wiegel lacked standing because she had failed to allege that she had read and had been deceived by the notice:

> Missing from the complaint is <u>any allegation that plaintiff herself read or received any of these notices.</u> And while plaintiff alleges that "[p]ursuant to the instructions given in the recall notice, Plaintiff ordered the repair kit from [defendants'] website," she <u>does not allege facts to support a claim that she was personally misled into believing</u> that she could not pursue a refund or that she tried to seek a refund. [*Id.* at *2 (emphasis supplied)].

As in *Wiegel*, Plaintiff does not have Article III standing, as it has not pled facts showing that it read and was actually deceived by a specific misrepresentation or nondisclosure as to the identity of the source of Ice Mountain® 5-gallon bottles of water when it purchased the product in 2008. The complaint does not allege what misrepresentation or nondisclosure was made by NWNA on a website in 2008, what was deceptive about it, and how Plaintiff was deceived by it to purchase Ice Mountain® 5-gallon bottles of water that were sourced from a municipal water system. Importantly, Plaintiff does not allege any facts as to how it was deceived as to the contents of the 5-gallon bottles after its first purchase and delivery of the Ice Mountain® 5-gallon bottles.[2] The complaint relies upon invoices, truck logos and August 2012 website images post-dating Plaintiff's cancellation of service, all of which came <u>after</u> Plaintiff purchased the product. Consequently, neither the invoices nor truck logos nor website can establish a causal connection between the commission of the alleged deceptive act and its first purchase of the 5-gallon bottles in 2008, the injury of which Plaintiff complains. Absent facts showing this indispensable causal link, Plaintiff lacks standing and the complaint must be dismissed.

---

[2] The complaint cannot allege any such facts as the 5-gallon bottles were identified as containing "Drinking Water Purified By Reverse Osmosis." [Exh. "A"]. Beginning in 2009, the 5-gallon bottles also identified the source of the water as "Source: Woodridge, IL Municipal Water Supply." [Exh. "B"].

## II. Plaintiff's State Law Claims Are Expressly Preempted By The FDCA

The Supremacy Clause of the United States Constitution empowers Congress to enact laws that preempt state laws. *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010). Plaintiffs' state law claims have been expressly preempted by the FDCA, which preempts any requirement imposed directly or indirectly by state law that is not identical to federal law:

> (a) ...[N]o State or political subdivision of a State may **directly or indirectly** establish under any authority or continue in effect as to any food in interstate commerce ―
>  (1) any **requirement** for a food which is the subject of a standard of identity established under section 341 of this title that is **not identical to** such standard of identity or that is not identical to the requirement of section 343(g) of this title.

21 U.S.C. §343-1[3] (emphasis supplied).

When a cause of action imposes a requirement that is inconsistent or not the same as the federal requirement, it is preempted. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 327-328 (2008) (common law causes of action for negligence and strict liability impose "requirements"); *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 443 (2005) ("[T]he term 'requirements' … reaches beyond positive enactments, such as statutes and regulations, to embrace common law duties."); *In re Pepsico, Inc. Bottled Water Mktg. & Sales Prac. Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) ("[S]tate law causes of action … are preempted where they impose obligations not imposed by federal law.") This Court and the Seventh Circuit have recognized that the FDCA expressly preempts state law requirements that directly or indirectly impose disclosure obligations that are "not identical to" federal requirements. *Turek v. General Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011), *aff'g* 754 F. Supp. 2d 956 (N.D. Ill. 2010); *McMullen v. Medtronic,*

---

[3]  21 U.S.C. §343-1 was enacted as part of the Nutrition Labeling and Education Act of 1990, an amendment to the FDCA.

*Inc.*, 421 F.3d 482, 487 (7th Cir. 2005) (term "requirements" reaches "beyond positive enactments ... to embrace common law duties").

"Bottled water" is a food subject to the FDCA, which establishes standards of identity for different types of bottled water, including "purified water," "spring water," "ground water" and "mineral water"). 21 C.F.R. §165.110(a).[4] In this case, the bottles of water identified in the complaint are Ice Mountain® 5-gallon bottles of drinking water that are labeled "DRINKING WATER, Purified by Reverse Osmosis"[5] [Exh. "A"], and "DRINKING WATER, Purified By Reverse Osmosis, Source: Woodridge, IL., Municipal Water Supply" [Exh. "B"]. At the core of Plaintiff's causes of action is its allegation that NWNA was required to disclose that the source of its Ice Mountain® 5-gallon bottled water was municipal tap water. [Doc. 1 (¶57)]. Requiring disclosure that the source of this water was a municipal water source would not only impose a requirement different from FDCA requirements for purified water, but would create a requirement that has been specifically rejected by the FDA. Although bottled water originating from a municipal water system without any purification treatment must be labeled "from a

---

[4] Section 165.110(a)(3)(ii) provides: "When bottled water comes from a community water system, as defined in 40 CFR 141.2, except when it has been treated to meet the definitions in paragraphs (a)(2)(iv) [purified water] and (a)(2)(vii) of this section and is labeled as such, the label shall state 'from a community water system' or, alternatively, 'from a municipal source' as appropriate, on the principal display panel or panels." Purified water is defined in 21 C.F.R. §165.110(a)(2)(iv).

[5] The actual Ice Mountain® 5-gallon bottles of water which Plaintiff first purchased did not identify the water as "Spring Water" and instead state that the product is "DRINKING WATER, Purified By Reverse Osmosis." [Exh. "A"]. Starting in 2009, the 5-gallon bottles described the product as "DRINKING WATER, Purified By Reverse Osmosis, Source: Woodridge, IL. Municipal Water Supply." [Exh. "B"]. The 5-gallon bottles, which include its labels, are incorporated by reference into the complaint and, therefore, may be considered on NWNA's motion to dismiss, as the complaint makes multiple specific references to the 5-gallon bottles [*see* Doc. 1 (¶¶1, 2, 22, 27, 28, 33, 36-40, 55, 57, 59-64, 68, 69)]. S*ee Minch v. City of Chicago*, 486 F.3d 294, 300 (7th Cir. 2007) (courts may consider documents even when not referenced, quoted or attached to the complaint without converting a Rule 12(b)(6) motion to one under Rule 56, whenever plaintiff's claims rest upon the document); *Tierney v. Vahle*, 304 F.3d 734, 738-739 (7th Cir. 2002) (plaintiff cannot "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved the claim had no merit.").

municipal source," the FDA, in adopting the standard of identity for purified water, specifically rejected any source-disclosure requirement. 21 C.F.R. §165.110(a)(3)(ii); *In re PepsiCo Bottled Water*, 588 F. Supp. 2d at 535 ("[T]he FDA specifically addressed the disclosure of source information and determined, in its expert opinion, that representations of source are immaterial in the context of purified water."). Plaintiff's state law claims, seeking to impose a disclosure requirement that is not identical to the FDA regulations governing the source disclosure of purified bottled water, are expressly preempted by the FDCA. 21 U.S.C. § 343-1.

The very same claim made by Plaintiff in this case was dismissed on a Rule 12(b)(6) motion as being preempted by the FDCA in *In re PepsiCo Bottled Water*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008) (cited approvingly by *Turek*, 662 F.3d at 426). The court in *PepsiCo* held that a requirement of disclosing that purified water came from tap water went beyond the requirements of disclosure set forth by the FDCA and was therefore preempted. There, plaintiffs alleged that Pepsi misled consumers by deceptively suggesting that its *Aquafina* bottled water was from a mountain source and failing to disclose that the actual source of its *Aquafina* water was a municipal water source. *Id.* at 529. The Court recognized that the FDA had specifically considered bottled water marketing and advertising, suggesting that a product comes from a spring when it does not, and **expressly rejected** a source-disclosure requirement for "purified water": "Here the standard of identity for purified water does not require the disclosure of source information, and therefore plaintiffs' state law claims seeking to impose liability on these grounds are expressly preempted." *Id.* at 538. In dismissing the complaint, the Court stated: "Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements…. Accordingly, any state law claims premised on a misrepresentation about the

-9-

source of purified water are preempted." *Id.* Because Plaintiff's state law claims attempt to impose a source disclosure requirement on NWNA's Ice Mountain® 5-gallon bottled water, they are expressly preempted and should be dismissed.

### III. NWNA's Disclosures Are Not Actionable Under The ICFA Safe-Harbor Provision, As They Were Specifically Authorized By FDA Regulation

The ICFA "will not impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations. If the parties are doing something *specifically authorized* by federal law, section 10b(1) [the ICFA Safe-Harbor Provision] will protect them from liability under the CFA." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001). Federal regulations establishing the standards of identity for bottled water specifically authorize (i) NWNA's description of its Ice Mountain® 5-gallon bottle as "DRINKING WATER, Purified By Reverse Osmosis;" and (ii) omitting any identification of the source of the water. 21 C.F.R. 165.110(a)(1), (2), (2)(iv), 3(ii) (authorizing the identification and labeling of processed bottled water as "drinking water," "purified drinking water," and "reverse osmosis water"; and exempting for purified water and reverse osmosis water, the disclosure of the source of the water, including that the source is municipal water). As the identification of Ice Mountain® 5-gallon bottles as "DRINKING WATER Purified by Reverse Osmosis" is specifically authorized by FDA regulations that do not require the disclosure of a municipal water source, Plaintiff's claim cannot serve as the basis for ICFA liability and should be dismissed. [Exh. "A"].

### IV. The ICFA Claim (Count I) Is Barred By The Three-Year Statute of Limitations

Plaintiff's ICFA claim -- that it was misled by NWNA's website to purchase Ice Mountain® 5-gallon bottles of water, not knowing that the bottled water came from a municipal water source -- accrued in January 2008, when Plaintiff first purchased 5-gallon bottles of Ice Mountain® water. [Doc. 1 (¶¶34, 37, 40, 59, 62)]. Plaintiff alleges that NWNA's website

provided the only information available to it, as it could not view the actual 5-gallon bottles before purchasing them. [*Id.* at ¶28]. However, after the first purchase and delivery of the 5-gallon bottles, Plaintiff was able to view the actual 5-gallon bottles that it purchased, which identified the product as "DRINKING WATER Purified By Reverse Osmosis." [Exh. "A"]. The invoices received by Plaintiff also identified the 5-gallon bottles as drinking water. [Exh. "D"]. Because the overt acts of deception and consequent purchase occurred in January 2008, Plaintiff's claim accrued more than three years prior to the filing of this action in September, 2012. It is time-barred, and its ICFA claim should be dismissed. *Hermitage Corp. v Contractors Adj. Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995).

### V.     Plaintiff's Unjust Enrichment Claim (Count II) Should Be Dismissed

Plaintiff's unjust enrichment claim cannot stand in the face of the express contract that existed between Plaintiff and NWNA.[6] *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill. 2010). Plaintiff's complaint alleges a contract with NWNA to purchase Ice Mountain® 5-gallon bottles of water for monthly delivery to its Chicago office. [Doc. 1 (¶34); Exh. "C" (contract)]. "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Duffy*, 722 F. Supp. 2d at 993. Count II concerns Plaintiff's purchase of Ice Mountain® 5-gallon bottles of water, which is the subject of the parties' contract, and therefore must be dismissed.

### VI.    Plaintiff's Claims Are Barred By The UCC's Safe-Harbor Provision, 810 ILCS 5/2-607(3)(a)

Plaintiff's purchase of NWNA's Ice Mountain® 5-gallon bottled water is governed by

---

[6]  A copy of the contract between Plaintiff and NWNA is annexed hereto as Exhibit "C" and may be considered in support of this motion because it is referenced in the complaint and is dispositive of the unjust enrichment claim. *See Minch*, 486 F.3d at 300; *Tierney*, 304 F.3d at 738-739; *supra* at n.1.

the Illinois Uniform Commercial Code ("UCC"), as it involves the sale of goods. 810 ILCS 5/2-102. UCC §2-601 provides that if a delivery of goods "fail[s] in any respect to conform to the contract, the buyer may (a) reject the whole; or (b) accept the whole; or (c) accept any commercial unit or units and reject the rest." 810 ILCS 5/2-601. The complaint alleges that Plaintiff received and accepted monthly deliveries of Ice Mountain® 5-gallon bottles of water beginning in 2008. [Doc. 1 (¶¶34, 37); Exh. "D"]. Having accepted and consumed allegedly non-conforming goods, Plaintiff is obligated to pay for them. 810 ILCS 5/2-607. If the goods did not conform to the contract, Plaintiff was obligated "within a reasonable time after [it] . . . should have discovered any breach [to] notify the seller of breach or be **barred from any remedy**." 810 ILCS 5/2-607(3)(a) (emphasis supplied). Plaintiff should have discovered the alleged nonconformity, as each 5-gallon bottle that it received was labeled "DRINKING WATER Purified By Reverse Osmosis," [Exh. "A"] and, starting in 2009, was labeled "DRINKING WATER Purified By Reverse Osmosis Source: Woodridge, IL., Municipal Water Supply" [Exh. "B"], and every invoice identified the product as drinking water. [Exh. "D"]. The complaint does not allege that Plaintiff ever provided the UCC-mandated notice to NWNA. By operation of the plain language of the UCC, Plaintiff is thus "barred from any remedy" by its failure to provide the statutorily-mandated notice.[7] *Snyder v. Heidelberger*, 953 N.E.2d 415, 420-421 (Ill. 2011) (statutes to be given their plain meaning).

---

[7] The Illinois Supreme Court has explicitly held that an ICFA claim will not lie for conduct that the Legislature has elsewhere exempted from liability. *Laughlin v. Evanston Hospital*, 500 N.E.2d 986, 993 (Ill. 1990). As the *Laughlin* Court noted, "[l]egislation is designed to be consistent. It would be inconsistent to provide that the very conduct which is not sufficient to state a cause of action under [one statute] is sufficient to state a cause of action under the Consumer Fraud Act." *Id.* Where a claim for certain conduct has been foreclosed in one piece of legislation, the ICFA cannot be manipulated to create a remedy that the Legislature has seen fit to foreclose. *Id.*; *cf. Cel-Tech Comms., Inc. v. L.A. Cell. Tel. Co.*, 973 P.2d 527, 563 (Cal. 1999) (analogously holding that "the unfair competition law does not permit an action that another statute expressly precludes"). Accordingly, the ICFA claim fails as a matter of law.

### VII. Plaintiff's Claims Are Barred By The Voluntary Payment Doctrine

Plaintiff bases its damages on the allegation that it received and paid monthly invoices for Ice Mountain® 5-gallon bottled water. [Doc. 1 (¶¶37, 40)]. The invoices reflect monthly charges for the period of January, 2008, through June, 2012. [Exh. "D"]. Each invoice identifies Ice Mountain® 5-gallon bottled water as drinking water, <u>not</u> spring water. [*Id.*] On the first invoice sent to Plaintiff, the items delivered included <u>both</u> products that are "spring water" (complimentary .5L bottles) and "drinking water" (5-gallon bottles). [Exh. "D-1"] Contrary to Plaintiff's complaint, which references but does not attach the invoices, no invoice identifies the Ice Mountain® 5-gallon bottled water as spring water; instead, they uniformly identify it as drinking water. [Exh. "D"]. Where money is voluntarily paid on a claim of right, it cannot be recovered in a subsequent claim that the receiving party had no right to it. *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 667-669 (7th Cir. 2001). Therefore, Plaintiff is barred by the voluntary payment doctrine from recovering those monies which it knowingly and voluntarily paid. *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1136 (Ill. App. Ct. 1995) (dismissing ICFA claim for lack of damage due to voluntary payment); *Harris v. Chartone*, 841 N.E.2d 1028, 1031 (Ill. App. Ct. 2005) (doctrine "applies to any cause of action").

### VIII. Plaintiff Has Not Alleged Facts Plausibly Showing That It Was Actually Deceived By NWNA's Alleged Conduct In Violation Of The ICFA

Plaintiff's complaint does not allege facts showing a plausible claim for relief under the ICFA. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *McReynolds v. Merrill Lynch & Co., Inc.*, ___ F.3d ___, 2012 WL 3932328, at *3 (7th Cir. Sep. 11, 2012). Under *Iqbal*, Plaintiff must plead factual content, as opposed to conclusory allegations, that must cross the "line between possibility and plausibility of entitlement to relief." *McReynolds*, 2012 WL 3932328 at *9. Moreover, Plaintiff must plead its ICFA claim with the particularity required by Fed. R. Civ. P.

9(b). *Ellis v. Allstate Ins. Co.*, 478 F. Supp. 2d 782, 790 (N.D. Ill. 2006)

The elements of a private cause of action under the ICFA are "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery*, 835 N.E.2d at 850. Particularity means Plaintiff must provide details that include the who, what, where, when, and how of a fraud claim. *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 790 (7th Cir. 2005). Heightened pleading requirements impose upon Plaintiff an obligation "to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims." *Id.*

Plaintiff has failed to allege facts showing that it was actually deceived in 2008. Notwithstanding its heavy reliance on excerpts from an NWNA website, nowhere does Plaintiff allege a single fact identifying what it read and how it was deceived to purchase Ice Mountain® 5-gallon bottled water in 2008. Citing extensively to webpages, either dated August 2012 or not bearing any date, does not satisfy Plaintiff's obligation to allege facts plausibly showing what Plaintiff read on NWNA's website in 2008, how it was deceptive, and how Plaintiff was deceived by it. *Avery*, 835 N.E.2d at 845-846 (if "there is no evidence that any of the named plaintiffs ever read, saw or were in any way aware" of the allegedly misleading documents, there is no ICFA claim). Not a single paragraph describing the allegedly misleading statements alleges that Plaintiff actually read the statement. [Doc. 1 (¶¶23-26, 28-30)]. Nor does the complaint allege that the website blurbs even existed in 2008, when Plaintiff first purchased Ice Mountain® 5-gallon bottled water. [*Id.* at ¶34]. *In re McDonald's French Fries Litig.*, 503 F.

Supp. 2d 953, 956 (N.D. Ill. 2007) (requiring plaintiff to plead website content existing at time of the alleged deception). These defects doom Plaintiff's ICFA claim.[8]

Ultimately, Plaintiff cannot allege facts showing that it was actually deceived because the Ice Mountain® 5-gallon bottles of water, the very product Plaintiff claims it was deceived to purchase, did not identify the water as "spring water," but identified the product as "DRINKING WATER Purified By Reverse Osmosis." [Exh. "A"]. Beginning in 2009, the 5-gallon bottles also identified the source of the water as "Source: Woodridge IL., Municipal Water Supply." [Exh. "B"]. The invoices received by Plaintiff also dispel any notion that it was misled that the product was anything but drinking water. [Exh. "D"].

## **CONCLUSION**

Accordingly, this Court should grant NWNA's motion to dismiss the complaint.

Dated: November 9, 2012

Respectfully submitted,

/s/ Sarah R. Wolff
Sarah R. Wolff (ARDC No.: 3123733)
David Z. Smith (ARDC No. 6256687)
REED SMITH LLP
10 South Wacker Drive - 40th Floor
Chicago, Illinois 60606-7507
    and
Jeffrey M. Garrod
(admitted *pro hac vice*)
ORLOFF, LOWENBACH,
   STIFELMAN & SIEGEL, P.A.
101 Eisenhower Parkway, Suite 400
Roseland, New Jersey 07068-1097
*Attorneys for Defendant*

---

[8] Plaintiff's conclusory allegations about logos on delivery trucks and invoices do not support its ICFA claim. As with the website statements, Plaintiff fails to allege that it read and was actually deceived by the trucks or invoices. By definition and its own pleading, trucks and invoices would not have been sent to Plaintiff until **after** it purchased Ice Mountain® bottled water. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 594 (Ill. 1997) (ICFA claim cannot be "based upon statements made *after* the dates of purchase alleged in the complaint.").

-15-

## **CERTIFICATE OF SERVICE**

I, Sarah R. Wolff, certify that on November 9, 2012, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Michael J. Newman
>5225 Old Orchard Road
>Suite 5
>Skokie, IL 60077
>Michael@minlawoffices.com
>
>      And
>
>Irwin B. Levin,
>Richard E. Shevitz
>Lynn A. Toops
>COHEN & MALAD, LLP
>One Indiana Square, Suite 1400
>Indianapolis, IN  46204
>ilevin@cohenandmalad.com
>rshevitz@cohenandmalad.com
>ltoops@cohenandmalad.com

                              /s/ *Sarah R. Wolff*
                                 Sarah R. Wolff