# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE CHICAGO FAUCET SHOPPE, INC., on behalf of itself and all others similarly situated, | : Civil Action No. 1:12-cv-8119 |
| Plaintiff, | : |
| v. | : |
| NESTLÉ WATERS NORTH AMERICA INC., | : |
| Defendant. | : |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Sarah R. Wolff
David Z. Smith
REED SMITH LLP
10 South Wacker Drive - 40th Floor
Chicago, Illinois  60606-7507
*and*
Jeffrey M. Garrod
(admitted *pro hac vice*)
ORLOFF, LOWENBACH,
STIFELMAN & SIEGEL, P.A.
101 Eisenhower Parkway, Suite 400
Roseland, New Jersey  07068-1097
*Attorneys for Defendant*

# INTRODUCTION

Plaintiff contends that Nestlé Waters North America Inc.'s ("NWNA") motion to dismiss should be denied because NWNA has included certain invoices that have been altered. First, as explained in the Declaration of Ann Souza [Exh. "A"], the six invoices identified by Plaintiff have not been altered. The information and data on the six invoices attached to Plaintiff's Declaration of Amy Sherman [Doc. 25-1] is identical to the data and information on the same six invoices submitted by NWNA. Second, it is appropriate for the Court to consider the invoices given the references to the invoices in the complaint. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss acknowledges that its complaint references the invoices by stating: "The complaint provides a detailed outline of Nestlé's omission of a material fact in January 2008 by virtue of its website and invoices' failure to disclose that Nestlé's 5-gallon bottled water is not spring water...." [Doc. 25 at 7-8]. The purpose of providing the invoices to which the complaint refers is that every invoice identifying the purchase of an Ice Mountain® 5-gallon bottle identifies that bottle as drinking water. The invoices distinguish the description of the 5-gallon bottles Plaintiff purchased from the .5 liter bottles it purchased, which the invoices describe as ".5L natural spring water Ice Mtn." The Court only has to refer to Exhibit "1" to the Sherman Declaration [Doc. 25-1] to see this distinction.

It is Plaintiff that grossly mischaracterized the invoices' description of the Ice Mountain® 5-gallon bottle. Plaintiff states in its Memorandum that NWNA "relies on the inaccurate and altered invoices to argue that they identified the 5-gallon bottles as drinking water by using the letters DRK, but as already established, the _actual_ invoices sent to plaintiff repeatedly referenced spring water." [Doc. 25 at 13]. Not a single invoice identifies the 5-gallon bottles as "spring water." Plaintiff apparently relies on a reference to spring water appearing in the six invoices

attached to the Sherman Declaration that is in the logo and which identifies the .5 liter bottles. Spring water does not appear in the description of the 5-gallon bottles. As to the invoices attached to NWNA's motion as D7-D58, starting with the billing period in mid-July 2008, the invoices do not include the spring water logo. The words "spring water" only appear in those few invoices where plaintiff purchased .5 liter bottles. The Court only has to refer to the six invoices attached as exhibits to the Sherman Declaration. These invoices and the invoices attached to NWNA's motion as Exhibits D7-D58 provide the Court with a complete set of Plaintiff's invoices, which the Court may consider on a motion to dismiss.

## I. Plaintiff's ICFA Claim Requiring Disclosure of the Identity of the Source of Ice Mountain® 5-Gallon Bottled Water is Expressly Preempted

Plaintiff seeks to require the disclosure of the source of Ice Mountain® 5-gallon bottled water. [Doc. 1 at 18]. Plaintiff's claims, however, are expressly preempted by the Food Drug & Cosmetic Act ("FDCA"). *See, e.g., Turek v. General Mills, Inc.*, 662 F.3d 423 (7th Cir. 2011) (dismissing ICFA claim as preempted under FDCA). Plaintiff's sole argument opposing preemption — that the complaint relates to a website, not labeling — finds no purchase in the law of preemption by the relevant statutory provision.[1] Instead, the court in *In re PepsiCo Bottled Water* got it right: federal law preempts claims that purified bottled water improperly fails to disclose the source of the water. Significantly, the cases relied upon by Plaintiff in its opposition do not address the applicable preemptive statutory provision regarding the standard of

---

[1] An omission claim, like Plaintiff's, by its nature cannot be cabined to a particular medium or location of disclosure; it depends on the totality of the disclosures. *Barsky v. Metro Kitchen & Bath, Inc.*, 587 F. Supp. 2d 976, 995-96 (N.D. Ill. 2008) (omission claim depends on all information "disclosed or available to the consumer."); *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) (same). As with a failure to warn claim premised on materials other than labels and labeling, Plaintiff's omission claim necessarily entails evaluation of the labeling, an inquiry preempted by the FDCA. *See, e.g., Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir.) (rejecting argument that liability may arise from "informational materials that are 'unrelated' to labeling and packaging" because they "necessarily challenge the . . . product's labeling or packaging."), *cert. denied sub nom., Papas v. Zoecon Corp.*, 510 U.S. 913 (1993); *see also In re Starlink Corn*, 212 F. Supp. 2d 828, 836 (N.D. Ill. 2002).

identity, 21 U.S.C. §343-1(a)(1).

Express preemption under the "standard of identity" section of the FDCA is not limited to labels, despite Plaintiff's attempt to infuse that limitation into the statute.[2] Section §343-1(a)(1) contains broad language preempting "any requirement" related to the standard of identity set forth by federal law. There is no support in the statutory text, legislative history or case law for restricting the preemptive reach to only labeling.

Interpreting a statute that provides for preemption begins by reading the text. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Legislative intent, the touchstone of preemption analysis, manifests most clearly in the plain language of the statutory provision. *Id.*; *see also Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745-746 (7th Cir. 2005). In this case, the statutory language is plain and requires preemption of Plaintiff's claims. Excepting only maple syrup, Section §343-1(a)(1) provides express preemption of "any requirement for a food" imposed "directly or indirectly" by state law that is "not identical to" the standard of identity requirements of federal law. In relevant part, that provision states:

(a)     Except as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce —

(1) any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirements of section 343(g) of this title, except that this paragraph does not apply to a standard of identity of a State or political subdivision of a State for maple syrup that is of the type required by sections 341 and 343(g) of this title.

21 U.S.C. § 343-1.

Plaintiff seeks to impose a source disclosure requirement for Ice Mountain®'s 5-gallon purified water. Subpart (a)(1) preempts such a requirement, as it falls within the very broad

---

[2] Courts should resist attempts to "read[] words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997), *aff'g* 96 F.3d 964 (7th Cir. 1996)

language precluding imposition of "any requirement", imposed "directly or indirectly", for a food (bottled water) which is the subject of a standard of identity[3] where the requirement is "not identical to" the standard of identity set forth in federal law.[4]

In addition to the plain language of the statute, the statutory context makes it clear that Congress did not intend to limit preemption to only labels. Congress's use of language in one section of a statutory provision and omission in another section of that same provision strongly evidences Congressional intent. *Bates*, 522 U.S. at 29-30. If Congress intended subpart (a)(1) to be limited to labels, it knew how to do it; indeed, four of the five subparts of 21 U.S.C. §343-1(a) contain language expressly limiting the reach of that subpart to "labeling".

- Subpart (a)(1) — the section at issue in this case — preempts "any requirement for a food which is the subject of a standard of identity . . . that is not identical to such standard of identity . . . ."

In contrast, the four following subparts in section 343-1(a) insert a "labeling" phrase:

- Subpart (a)(2) preempts "any requirement *for the labeling of food* . . . ."

- Subpart (a)(3) preempts "any requirement *for the labeling of food* . . . ."

- Subpart (a)(4) preempts "any requirement *for nutrition labeling of food* . . . ."

- Subpart (a)(5) preempts "any requirement respecting any claim . . . made in the *label or labeling of food* . . . ."

Congress was cognizant of how to limit the preemptive force of Section 343-1 to labeling, and it chose not to do so for standard of identity preemption. Instead, it chose to preempt all standard of identity claims, such as the source disclosure requirement, without

---

[3] Bottled water is a food subject to the standard of identity, as more fully set forth in NWNA's moving brief. [Doc. 20 at 8-9]

[4] Plaintiff does not argue in opposition that its claims do not qualify as requirements (because they are). Plaintiff also does not argue in opposition that Ice Mountain®'s 5-gallon bottled water is other than a food subject to the federal standard of identity for purified water. Finally, Plaintiff does not argue that the source disclosure requirement it seeks to impose is not directly contrary to federal regulations and the considered conclusions of the FDA after its formal rulemaking process.

limitation to labeling.[5]

Cases such as *In re PepsiCo Bottled Water*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008), provide that express preemption of standards of identity is not limited, as Plaintiff would have this Court do, to labeling. *See also Mills v. Giant of Maryland, LLC*, 441 F. Supp. 2d 104, 107-108 (D.D.C. 2008) (holding that "[t]he scope of FDCA's preemption clause [21 U.S.C. §343-1(a)(1)] is much broader than FIFRA's, prohibiting 'any' requirement as opposed to merely requirements 'for labeling or packing.'"). *PepsiCo* addressed the very same claims made by Plaintiff in this case: claims that defendant misleadingly marketed and bottled purified drinking water and unlawfully omitted identifying the source of the water.

*PepsiCo*, 588 F. Supp. 2d at 535, 538-539, addressed preemption under the FDCA and held that claims imposing a source-disclosure requirement for purified drinking water are preempted as contrary to federal law. Plaintiff's attempt to distinguish that case because the plaintiff in *PepsiCo* mentioned labeling fails. The *PepsiCo* Court's description of the preempted claims included claims that defendant "fraudulently misrepresented the source of *Aquafina* water by using a label designed to create the impression that the water came from a mountain source ***and*** failing to inform consumers that the true source of *Aquafina* water was public drinking supplies commonly known as 'tap water'." *Id.* at 529 (emphasis supplied). Among the many allegations regarding marketing pled in the *PepsiCo* complaint,[6] the plaintiffs included

---

[5] The legislative history also reveals an intent to create broader, rather than narrower, preemptive force to the regulations. Originally, the preemptive sections in the predecessor bill contained only two narrow preemption sections, both limited to labeling. Nutrition Labeling and Education Act of 1990, H.R. 3562 RH (Reported in House June 13, 1990), 101st Cong. § 6. After the bill moved out of committee and after it was reported to the House, the preemption provisions were expanded to encompass five subparts. 136 Cong. Rec. H5836-01 (July 30, 1990) (statement of Rep. Waxman) ("Section 6, which provides for the preemption of certain State laws, has also been expanded.").

[6] The *PepsiCo* plaintiffs' consolidated complaint also explicitly relied on the same omission claims and website advertisements and marketing that Plaintiff argues in this case. *See In re PepsiCo*, No. 07-cv-
*(continued on next page)*

allegations precisely mirroring those made by Plaintiff here, including that the *Aquafina* "*website fails to inform consumers that the true nature of the source of the water marketed and sold as Aquafina is tap water.*" *In re PepsiCo*, No. 07-cv-6815, Doc. 1 (Class Action Complaint) (S.D.N.Y. July 30, 2007) [Exh. "C"]. Plaintiff in this case may have attempted to avoid through artful pleading[7] the allegations made in *PepsiCo* about labeling, but nonetheless relies extensively on the same claim that the company "fail[ed] to inform consumers that the true source of" the bottled water "was public drinking supplies." *In re PepsiCo*, 588 F. Supp. 2d at 529.

The Court repeatedly noted that the FDA crafted its regulations exempting purified water from any source disclosure requirement, while cognizant of the stated concern that bottled water may be connected with "marketing and advertising" campaigns designed to suggest that the water comes from a "tranquil, distant, utopian source." *Id.* at 535-537 (discussing regulations and Federal Register entries in detail).[8] The *PepsiCo* Court construed the statutory language to

---

(continued from previous page)

6874, Document No. 20 (Consolidated and Amended Class Action Complaint) (S.D.N.Y. May 8, 2008) [Exh. "B"] at ¶1 (alleging liability based on "the **marketing**, labeling and sale of *Aquafina*"; that defendants "failed to inform and **withheld material information** from consumers that the true source of the water used in *Aquafina* was public 'tap water'"; that "Defendants **marketed**, labeled and sold *Aquafina*" in a misleading way; and that defendants engaged in "**marketing** and labeling schemes" by "**withholding information** that would be material"); at ¶21 (describing the first common question of law and fact as "whether the water **marketed**, labeled and sold as *Aquafina* was bottled from sources generally known as 'tap water'"); and at ¶¶43, 45, 46, 54 (referring repeatedly to defendants' wrongful actions as including misleading "**marketing**" campaign) (all emphasis supplied).

[7] Plaintiffs "cannot avoid preemption by artful pleading. [Courts] must scrutinize the[] allegations to ensure that they are not disguised" claims that would otherwise be preempted. "If a claim amounts to a constructive challenge to the []-approved label", such as a failure to warn claim, the claim is preempted. *In re Starlink Corn Prods. Liability Litig.*, 212 F. Supp. 2d at 836.

[8] The Federal Register evidences the FDA's consideration of precisely the claims that Plaintiff asserts: "FDA also realizes that there may be a significant difference in price for bottled water products depending on the representations made or implied by the product labeling. Often marketing and advertising associated with bottled water suggest that the 'water comes from a tranquil, distant, utopian source'.... Therefore, FDA agrees that there is a need *to define the various types of bottled water products* because such information is of material interest to consumers. .... Therefore, FDA is proposing to require in

(continued on next page)

mean what it says: "Where the product is the subject of a federal standard of identity, state requirements are not permitted unless they are identical to federal standards. [Defendant] meets the federal standards regarding source disclosure for purified water, and thus [the] action is preempted." *Id.* at 539; *see also Mills*, 441 F. Supp. 2d at 107-108.

None of the cases relied upon by Plaintiff sanctions the advertising/labeling distinction it seeks to engraft onto the statute.[9] *Zapka v. Coca-Cola Co.*, 2001 WL 1558276 (N.D. Ill. Dec. 5, 2001), which Plaintiff cites to support its false dichotomy, does not address express preemption or the standard of identity preemption of 21 U.S.C. §343-1. *Zapka* involved the denial of a motion to refer claims to the FDA under the "doctrine of primary jurisdiction."[10] *Id.* at *5.

The primary commonality between all of the cases cited by Plaintiff that address preemption and this case is that they recognize what Plaintiff here fails to recognize: statutory language and legislative intent is paramount. In failing to refer to the relevant statutory language, to refer to any case that interpreted that language, or to otherwise address the clear distinction between subpart (a)(1) and other preemptive provisions, Plaintiff has overlooked the very foundation of the preemptive force and the proper scope and application of the preemption

---

*(continued from previous page)*
§165.110(a)(3)(ii) that the phrase 'from a municipal source' appear on the principal display panel or panels as a part of the name of the food if the water is obtained from a municipal water supply, *except if the water has been treated to meet the definitions of distilled water or purified water and is labeled as such*...." Beverages: Bottled Water, 58 Fed. Reg. 393, 395, 399-400 (Jan. 5, 1993) (to be codified at 21 C.F.R. pts. 103, 129, 165 and 184).

[9] In a decision affirmed by the Seventh Circuit, Judge Zagel specifically rejected attempts to draw a bright-line distinction between so-called marketing and labeling, noting that to the extent there is a difference, it does not act to usurp the expertise — or authority — of the FDA. *Bober v. Glaxo Wellcome, Plc*, No. 99-cv-3243, 1999 WL 759364, *1-2 (N.D. Ill. Sep. 3, 1999), *aff'd*, 246 F.3d 934 (7th Cir. 2001).

[10] The other cases cited by Plaintiff are equally inapposite. *See Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900 (N.D. Ill. 2011) (addressing *conflict* preemption under the Federal Communications Act, not *express* statutory preemption under FDCA); *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278 (6th Cir. 2011) (addressing preemption under the National Traffic and Motor Vehicle Safety Act of 1996, not express preemption under the FDCA); *Good v. Altria Group, Inc.*, 501 F.3d 29 (1st Cir. 2007) (collecting cases and addressing preemption under the Federal Cigarette Labeling and Advertising Act, not FDCA).

statute, 21 U.S.C. §343-1(a)(1), which is not limited to only labeling.

## II. ICFA's Safe Harbor Precludes Liability Because Federal Regulations Specifically Authorize the Non-Disclosure of the Source of Ice Mountain® 5-Gallon Bottled Water

Plaintiff does not challenge that the FDA expressly considered <u>and</u> rejected the exact source disclosure requirement that Plaintiff seeks to impose. Instead, Plaintiff argues that the FDA's express rejection was only in the context of labeling requirements, ignoring the language of the statutory provision and the breadth of the FDCA and its regulations governing the standard of identity of bottled water. Illinois law provides that when a regulatory agency sets forth "applicable disclosure requirements," then "full compliance with applicable disclosure requirements is a defense, under section 10b(1), to a claim of fraud based on the failure to make additional disclosures." *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 41 (Ill. 2006); *see also Jarvis v. South Oak Dodge, Inc.*, 773 N.E.2d 641 (Ill. 2002); *Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462 (Ill. 2001); *Lanier v. Assocs. Fin., Inc.*, 499 N.E.2d 440 (Ill. 1986). The FDA standard of identity regulation for purified bottled water provides that disclosure of a municipal water source is not required. Plaintiff cannot transform NWNA's compliance with this federal regulation into an actionable ICFA claim; Section 10b(1) provides NWNA with a safe harbor.

## III. The ICFA Claim Is Time-Barred And Not Subject To The Discovery Rule

Plaintiff's ICFA claim is barred by its three-year statute of limitations. 815 ILCS §505/10a(e). Plaintiff filed its complaint in September 2012, well more than four years after its claim accrued in January 2008, when it was allegedly deceived by an omission on the Ice Mountain® website causing it to purchase 5-gallon Ice Mountain® water. Acknowledging that its ICFA claim is time-barred, Plaintiff futilely attempts to invoke the "discovery rule" by claiming the statute was tolled because it only discovered in July 2012 that the 5-gallon Ice Mountain® water it had been purchasing for almost five years was not spring water.

Under Illinois law, the statute of limitations "starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action." *Witherell v. Weiner*, 421 N.E.2d 869, 874 (Ill. 1981); *In re March FIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (*quoting Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980-981 (Ill. 1981) ("[T]he limitations period begins to run when 'the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.'")).

In this case, the time for bringing suit began to run in February 2008, when Plaintiff acquired "sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct was involved." *Vector-Springfield Props., Ltd. v. Cent. Ill. Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir. 1997). From the moment that Plaintiff received the first 5-gallon bottle of Ice Mountain® water that was not labeled spring water, but "Drinking Water, Purified by Reverse Osmosis," [Exh. "D"], or the first invoice identifying Ice Mountain® 5-gallon bottled water as Drinking Water [Exh. "1" to Doc. 25-1], a reasonable person would have known to ask the question: Do the Ice Mountain® 5-gallon bottles contain spring water?[11] The 5-gallon Ice Mountain® bottles that Plaintiff purchased monthly over the next fifty-five (55) months made no reference to spring water and provided Plaintiff with direct notice that the 5-gallon bottles did not contain spring water. Moreover, starting in 2009, within the limitations period, the Ice Mountain® 5-gallon bottles were identified as "Drinking Water" "Source - Woodridge IL. Municipal Water Supply." [Exh. "D"].

---

[11] Plaintiff pleads that it did ask this question of NWNA in July 2012 and was told the Ice Mountain® 5-gallon bottles are not natural spring water, but resold municipal tap water. [Doc. 1, ¶38]. Plaintiff's delay in asking this question is neither reasonable nor excusable.

The statements on the bottle label and invoices that the Ice Mountain® 5-gallon bottles were Drinking Water created a legal duty for Plaintiff to make a diligent inquiry. *Wolin v. Smith Barney Incorporated*, 83 F.3d 847, 853 (7th Cir. 1996), *abrogated on other gds.*, *Klehr v. A. O. Smith Corp.*, 521 U.S. 179 (1997) (citing *Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1168 (7th Cir. 1995) ("A written statement available to the victims of fraud that reveals that a fraud has been committed furnishes constructive or inquiry notice of the fraud, and <u>constructive notice creates a duty of diligent inquiry</u>.")) (emphasis supplied); *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 419 (D.D.C. 2011) (citing *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *1 (S.D.N.Y. Aug. 5, 2010) ("The ingredient label on the purchased drinks provided plaintiff with all of the information he needed to reasonably question the veracity of defendant's 'all natural' claim and its significance under the applicable D.C. law.")).

The discovery rule does not toll the running of the statute of limitations "when **with ordinary diligence** the plaintiff might have discovered, within the limitation period, that the cause of action existed.'" *Leffler v. Engler, Zoghlin & Mann, Ltd.*, 510 N.E.2d 1018, 1020 (Ill. App. Ct. 1987) (emphasis supplied). Plaintiff failed to make any inquiry, let alone a reasonably diligent inquiry, as to the source of the product it had purchased. Having received for nearly two years multiple bottles of 5-gallon Ice Mountain® water, each bottle identifying its contents as "Drinking Water," Plaintiff should have inquired as to the source of the product it had purchased. *See Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 762-767 (S.D. Ill. 2010) (holding that plaintiff could not rely on the discovery rule to toll the ICFA statute of limitations where the "Classic" Coke label identified the contents of the product). In the foregoing instances, as in this case, the product label directly provided the consumer with sufficient information and thereby

placed it on notice of its contents.[12] Plaintiff should have known that the Ice Mountain® 5-gallon bottles may not contain spring water and should have made the appropriate inquiry.

## IV. Plaintiff's Unjust Enrichment Claim Must Be Dismissed

Plaintiff's unjust enrichment claim should be dismissed because it is not a stand-alone claim. If the ICFA claim fails, then the unjust enrichment claim founded on the same factual predicate must also be dismissed. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). The unjust enrichment claim should also be dismissed because the relationship is governed by contract. Plaintiff offers no basis on which to doubt the authenticity of the contract and cannot effectively put into question the authenticity of the contract merely by refusing to "concede" its authenticity.[13] *See Great West Cas. Co. v. Volvo Trucks N. Am.*, No. 8-cv-2872, 2009 WL 588432, at *2 (N.D. Ill. Feb. 13, 2009) (documents challenged as unauthenticated were considered as proponent submitted authenticating affidavit); *ABN AMRO, Inc. v. Capital Int'l Ltd.*, No. 4-cv-3123, 2007 WL 845046, at *10 (N.D. Ill. Mar. 16, 2007) (documents considered because challenge to "indisputability" of authenticity was unsupported). With no genuine dispute as to the authenticity of the contract, the unjust enrichment claim should be dismissed. *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 993 (N.D. Ill. 2010).

For the same reasons set forth in NWNA's moving brief [Doc. 20 at 12-13], Plaintiff should not be given leave to plead a futile breach of contract claim, which would be governed by the UCC and barred by its safe-harbor provision, 810 ILCS 5/2-607, because an inspection of the

---

[12] *Zapka v. The Coca-Cola Co.*, 2001 WL 1558276 (N.D. Ill. Dec. 5, 2001), is inapposite here for precisely this reason. In *Zapka*, the product packaging and label of the primary ingredient (syrup) was not available to consumers who, therefore, did not have access to and were not placed on notice of the information appearing on the label.

[13] The rule under *Tierney* would be seriously impaired if a plaintiff, having artfully pled a cause of action without reference to a dispositive document, could thereafter artfully dodge a motion to dismiss premised on that document merely by refusing to "concede" its authenticity.

goods would have plainly revealed what was on every label: the goods were drinking water purified by reverse osmosis. Plaintiff's claim that the UCC safe-harbor provision would eviscerate the ICFA is legal sophistry. The UCC and the ICFA relate to the same subject matter and are to be construed harmoniously. *Jackson v. H. Frank Olds, Inc.*, 382 N.E.2d 550, 555 (Ill. App. Ct. 1978). In this case, it does no violence to the ICFA to hold that Plaintiff is "barred from any remedy" under the UCC by its failure to notify NWNA of the alleged nonconformity of the 5-gallon Ice Mountain® water bottles.

### V. Plaintiff Has Not Alleged Facts Showing A Plausible ICFA Claim

Plaintiff's complaint should be dismissed for the additional reason that it fails to plead a single fact plausibly showing that it suffered an actual injury-in-fact caused by the alleged omission of the source of Ice Mountain® 5-gallon bottled water on the 2008 **Ice Mountain® website**. [Doc. 1 (Complaint), ¶¶34-35]. Plaintiff alleges that after an officer viewed one and only one website -- **the 2008 Ice Mountain® website 'www.icemountainwater.com'** -- it began purchasing Ice Mountain® 5-gallon bottled water "at all times … believ[ing] that it was purchasing five-gallon bottles that contained 100% Natural Spring Water from Nestle Waters." [Doc. 1 (Complaint) at ¶¶35-36]. To state an ICFA omission claim, Plaintiff must plead facts plausibly showing how the content of the 2008 Ice Mountain® website was deceptive and how that deception caused actual injury to Plaintiff. *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (requiring plaintiff to plead website content at time of alleged deception). The complaint does not allege a single fact showing what content on the 2008 Ice Mountain® website was misleading or deceptive.

Plaintiff attempts to amend its legally insufficient complaint by arguing that it has alleged facts (i) showing that it read "Nestle's website"; and (ii) supporting an inference that "Nestle's website" omitted the disclosure of the municipal source. [Pb1, 2]. Plaintiff cannot use its brief

to rewrite the legally insufficient allegations of its complaint. *Bissessur v. Indiana Univ. Bd. of Trus.*, 581 F.3d 599, 603 (7th Cir. 2009) (complaint may not be amended by briefing). Plaintiff confuses its allegations by attributing statements allegedly made on a 2012 NWNA website to the "www.icemountainwater.com" website that Plaintiff alleges it viewed **in January 2008**. Plaintiff asserts that "Nestle's website" "repeatedly promises that spring water can be delivered to your home and office in 5-gallon bottles" [(quoting Doc. 1 (Complaint), ¶¶29-30)], which statements it attributes to the website, "www.waterdeliveryoffers.com" [Exh. "D" to Doc. 1 (Complaint)]. This website is not the "www.icemountainwater.com" website that was the one and only website that Plaintiff claims it viewed in 2008. [Doc. 1 (Complaint), ¶35]. Importantly, Plaintiff has not alleged that it read these statements on a "Nestle website" in 2008 prior to purchasing Ice Mountain® 5-gallon bottled water. Plaintiff's reference to these 2012 NWNA websites does not plausibly plead an ICFA claim. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 594 (Ill. 1997) (ICFA claim cannot be "based upon statements made *after* the dates of purchase alleged in the complaint.").

Plaintiff also argues that this Court should simply infer that the 2008 "www.icemountainwater.com" website must have failed to disclose the source as being a municipal water source.[14] [Pb6]. This quantum leap in logic is itself illogical, as inferences are drawn from facts, not the other way around. *Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."). To reasonably infer a material omission, Plaintiff must plead the factual context of what it read on the 2008 Ice Mountain® website and

---

[14] It is quite ironic that Plaintiff has presented material suggesting that the Ice Mountain® website changed at some point in time after 2008, while simultaneously attempting to rely upon the contradictory inference that it stayed the same.

how it was misleading. This Court cannot infer that the website suggested anything about Ice Mountain® 5-gallon bottled water, as Plaintiff has not pled any facts to support it.

Plaintiff has also failed to plead facts showing it has Article III standing to bring an ICFA claim based upon a causal connection between its claimed injury and NWNA's alleged conduct. *See Wiegel v. Stork Craft Mfr., Inc.*, ___ F. Supp. 2d ___, 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012) (*Wiegel II*) (granting motion to dismiss for lack of standing as plaintiff failed to plead facts that she had read and was deceived by alleged misrepresentation and, therefore, could not show a causal connection between misrepresentation and claimed injury). As in *Wiegel II*, Plaintiff lacks standing, as it has not pled facts showing that it was deceived by the 2008 Ice Mountain® website. Plaintiff's reliance upon *Wiegel v. Stork Craft Mfr., Inc.*, 780 F. Supp. 2d 691, 693-694 (N.D. Ill. 2011) (*Wiegel I*), is misplaced [Pb6], as the Court denied a motion for summary judgment of an ICFA misrepresentation claim on totally unrelated grounds.

By definition, Plaintiff's failure to satisfy its basic pleading obligations under Rule 8(a) and to establish Article III standing renders its complaint deficient under Rule 9(b)'s particularity pleading standard. [Pb6]. This is not some hypertechnicality, but rather a salutary requirement designed "to discourage a 'sue first, ask questions later' philosophy, *Pirelli Armstrong Tire Corp., etc. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011), by "forc[ing] the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir.), *cert. den.*, 528 U.S. 874 (1999). Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Id.*

Plaintiff once again tries to evade its pleading obligation by making the unsupported assertion that the facts are within NWNA's exclusive control. [Pb7]. Plaintiff has not pled any

facts showing that it conducted a pre-complaint investigation or how NWNA resisted Plaintiff's efforts to discover the facts. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 n.6 (7th Cir. 1998). Moreover, NWNA does not maintain exclusive control over the facts that Plaintiff needs to satisfy Rule 9(b). Unlike *Emery v. Am. Gen'l Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir.), *cert. den.*, 525 U.S. 818 (1998), Plaintiff is not entitled to be relieved of its Rule 9(b) obligation, as it had possession of essential information that was not within NWNA's exclusive control. First, Plaintiff has alleged that it viewed an internet website that was within the public domain and could reasonably be expected to know what it viewed on that public forum and what made it deceptive. Second, Plaintiff received the actual Ice Mountain® 5-gallon water bottles that disclosed that the water was Drinking Water. Third, Plaintiff also received invoices that similarly disclosed this fact. Based upon this available information, Plaintiff is subject to Rule 9(b), *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 897 (N.D. Ill. 2008), but has not pleaded facts sufficient to satisfy its requirements. *See Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768 (S.D. Ill. 2009), *vac. on other gds.*, 649 F.3d 533 (7th Cir. 2011).

## CONCLUSION

Accordingly, this Court should grant NWNA's motion to dismiss the complaint.

Dated: January 11, 2013

Respectfully submitted,

/s/     *Sarah R. Wolff*
Sarah R. Wolff (ARDC No.: 3123733
David Z. Smith (ARDC No.: 6256687)
REED SMITH LLP
10 South Wacker Drive - 40th Floor
Chicago, Illinois 60606-7507
     *and*
Jeffrey M. Garrod (admitted *pro hac vice*)
ORLOFF, LOWENBACH, STIFELMAN
   & SIEGEL, P.A.
101 Eisenhower Parkway, Suite 400
Roseland, New Jersey 07068-1097
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Sarah R. Wolff, certify that on January 11, 2013, I electronically filed the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> Michael J. Newman
> 5225 Old Orchard Road
> Suite 5
> Skokie, IL 60077
> Michael@minlawoffices.com
>
> And
>
> Irwin B. Levin,
> Richard E. Shevitz
> Lynn A. Toops
> COHEN & MALAD, LLP
> One Indiana Square, Suite 1400
> Indianapolis, IN 46204
> ilevin@cohenandmalad.com
> rshevitz@cohenandmalad.com
> ltoops@cohenandmalad.com

/s/ *Sarah R. Wolff*
Sarah R. Wolff

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| THE CHICAGO FAUCET SHOPPE, INC., on behalf of itself and all others similarly situated, | : : : : : | Civil Action No. 1:12-cv-08119 |
| Plaintiff, | : : | |
| v. | : : | |
| NESTLÉ WATERS NORTH AMERICA INC., | : : : | |
| Defendant. | : : | |

## DECLARATION OF ANN SOUZA

I, ANN SOUZA, make the following Declaration under penalty of perjury:

1.     I have personal knowledge of the facts stated herein, and I am competent to testify if called upon as a witness herein.

2.     I am the National Account Services Process Manager of Nestlé Waters North America Inc. ("NWNA"). In that capacity, I am knowledgeable about the business records for Ice Mountain® brand bottled water sales to its home and office customers, including the invoices and contract for Chicago Faucet Shoppe, Inc.'s ("Chicago Faucet") purchase of Ice Mountain® brand bottled water.

3.     NWNA did not alter any invoices or any information identifying the 5-gallon bottles purchased by Chicago Faucet. Six invoices for billing periods January 13, 2008 through June 12, 2008 (D1-D6, Exhibit "D" to NWNA's Memorandum Of Law In Support Of Defendant's Motion To Dismiss The Complaint ("Memorandum")), were printed exactly as they are archived. While these six invoices have a slightly different template than the invoices received by Chicago Faucet (the only difference being the inclusion of the Ice Mountain® Direct logo as opposed to an earlier version of the template with the Ice Mountain® natural spring water logo), all of the data and information on D1-D6 is exactly as it appeared on the invoices received by Chicago Faucet. The Chicago Faucet invoices for the billing periods June 13, 2008 through September 2012 used a template with the Ice Mountain® Direct logo that appears on the invoices marked D7-D58. (Exhibit "D" to Doc. #20).

4.     The reason why the six invoices were printed from their archive site with a template utilizing an Ice Mountain® Direct logo is because the invoice data and information can only be retrieved from their archive site with a template with the Ice Mountain® Direct logo. NWNA uses and has used for many years an independent third-party vendor to prepare and distribute NWNA's invoices to its home and office customers. The invoice vendor also archives for NWNA the data and information contained on its invoices. In May 2010, NWNA changed invoice vendors and transitioned its invoice archiving site to its new invoice vendor. At that time, the new vendor archived the old invoice data and information using the template with the Ice

Mountain® Direct logo, which was the invoice template then being used. The new vendor was not able to import previously archived invoice data with any original invoice templates. NWNA does not have access to its past invoice vendor's archive site.

5.     In May 2008, NWNA changed several of its brand logos appearing on its invoices to its home and office customers. The Ice Mountain® logo appearing on the invoices was changed to Ice Mountain® Direct in May, 2008. NWNA began transitioning to the invoice template utilizing the Ice Mountain® Direct logo. When NWNA began transitioning to the invoice template using the Ice Mountain® "Direct" logo, NWNA would have used the existing inventory of invoices until depleted. At sometime starting in June or July 2008, or shortly thereafter, the invoices Chicago Faucet received would have had the template with the Ice Mountain® Direct logo.

6.     The invoice data setting forth the account activity (date of transaction, reference number, quantity, description of product and amount charged), as well as all other printed information, including billing period, invoice number, account number, previous balance, balance due, Chicago Faucet name and address and any special offerings, on each of NWNA's invoices to Chicago Faucet attached as Exhibit "D" (D1 to D58) to NWNA's Memorandum (Doc. #20), are true and correct copies of the data that appeared on all of the NWNA invoices received by Chicago Faucet (including D1-D6). This data includes the description of the Ice Mountain® 5-gallon bottles as "DRK" or Drinking Water. The only bottles of water identified as

"spring water" on the Chicago Faucet invoices are .5 liter bottles of Ice Mountain®

spring water: ".5L Natural Spring Water Ice Mtn." (*See* D1, D21, D22, D54, D55).

      7.    Exhibit "C" to NWNA's Memorandum (Doc. #20) is a true and

correct copy of the first page of the contract between Chicago Faucet and NWNA for

the purchase and delivery of Ice Mountain® brand 5-gallon bottles of water and

related products.

<u>DECLARATION UNDER 28 U.S.C. §1746</u>

      I declare under penalty of perjury under the laws of the United States of

America that the foregoing Declaration is true and correct.

Dated:  January 8, 2013

ANN SOUZA

4

# EXHIBIT  B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: PepsiCo, Inc., Bottled Water Sales and
Marketing Practices Litigation

*This Document Relates to*:   All Actions

## PLAINTIFFS' CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, by and through their undersigned counsel, on behalf of themselves and all

others similarly situated, hereby bring this Plaintiffs' Consolidated and Amended Class Action

Complaint against PEPSICO INC., THE PEPSI BOTTLING GROUP, INC. and PEPSI

BOTTLING VENTURES LLC ("Defendants"). Plaintiffs make the following allegations based

upon their personal knowledge as to their own acts, and upon information and belief as well as

upon their respective attorneys' investigative efforts as to Defendants' actions and misconduct

as alleged herein:

### Nature of The Action

1.      In this class action lawsuit, Plaintiffs seek to obtain damages and/or compensatory

restitution for Defendants' wrongful and illegal conduct in the marketing, labeling and sale of

*Aquafina* bottled water ("*Aquafina*"), in that Defendants misrepresented the source of *Aquafina*

water by using a label designed to create the impression that the water came from a mountain

source and failed to inform and withheld material information from consumers that the true

source of the water used in *Aquafina* was public "tap water". Whether through intentional,

reckless, or negligent conduct, Defendants marketed, labeled and sold *Aquafina* notwithstanding

the fact that its source was misrepresented, undisclosed, and/or misleading. Defendants

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

intentionally created a false impression by their marketing and labeling schemes, which were designed to mislead Plaintiffs and other consumers by withholding information that would be material to any reasonable consumer in deciding whether to purchase and/or at what price to purchase *Aquafina*. Defendants did so to benefit from the higher price they could obtain by misrepresenting *Aquafina* as mountain spring water. As a result, the Plaintiffs herein, and many hundreds of thousands of other consumers, purchased *Aquafina* justifiably believing it came from a natural source and accordingly have suffered damage sounding in their claims set forth below for (a) violations of Uniform Deceptive Acts and Practices statutes (sometimes also referred to as "Consumer Protection Statutes"); (b) unjust enrichment; and (c) as to the California plaintiff and that portion of the class who reside in California, violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), California Civil Code §1790, *et seq.*

2.      Plaintiffs further seek declaratory and injunctive relief to prevent a reoccurrence of such wrongful conduct by Defendants inasmuch as Defendants, as set forth below, have, even since the true source of *Aquafina* was revealed and the controversy it caused, continued to market and sell *Aquafina* in a fashion that is materially misleading.

### Parties

3.      Plaintiff Brian Fielman is a resident and a citizen of the State of New York. Believing the true source for *Aquafina* was mountain spring water, Mr. Fielman purchased *Aquafina* during the two to three year period prior to July 28 or 29, 2007 by the case and by the bottle.

4.      Plaintiff Carmen Collado is a resident and a citizen of the State of New York. Believing that the true source for *Aquafina* was mountain spring water, Ms. Collado frequently purchased *Aquafina* by the case from at least five to six years ago to July 2007.

2

5.     Plaintiff Michael Jones is a resident and a citizen of the State of Tennessee. Not knowing that the true source for *Aquafina* was the same as for tap water, Mr. Jones frequently purchased *Aquafina* by the case from at least four to five years ago to July 2007.

6.     Plaintiff Regina P. Kelly is a resident and a citizen of the State of Texas. Believing that the true source for *Aquafina* was mountain spring water, Ms. Kelly frequently purchased *Aquafina* by the bottle from at least two years prior to July 2007.

7.     Plaintiff Amanda Litschke is a resident and a citizen of the State of California. Believing that the true source for *Aquafina* was the mountain spring water, Ms. Litschke frequently purchased *Aquafina* by the bottle from at least three years ago to July 2007.

8.     All Plaintiffs were shocked and surprised to learn, on or about July 2007 that the true source of the water in *Aquafina* tap water and that they had paid a premium price for tap water.

9.     Defendant PepsiCo, Inc. ("Pepsi") is a corporation organized under the laws of the State of North Carolina and has its principal place of business in Purchase, New York

10.     Defendant The Pepsi Bottling Group, Inc. ("PBG") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Somers, New York.

11.     Defendant Pepsi Bottling Ventures LLC ("PBV") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Raleigh, North Carolina.

12.     PBG and PBV (hereinafter collectively "Pepsi Bottlers") are bottling companies affiliated with Pepsi, and are two of Pepsi's "anchor bottlers" of *Aquafina* and other Pepsi

3

products, and are primarily responsible for manufacturing, selling and distributing *Aquafina* throughout the United States.

13.    With respect to the conduct alleged herein, the acts and alleged wrongdoing of Defendants Pepsi and the Pepsi Bottlers may be imputed to each other inasmuch as they acted as a joint enterprise, co-venturers, agents, or co-conspirators of each other.

### Jurisdiction and Venue

14.    This Court has subject matter jurisdiction over this matter pursuant 28 U.S.C. § 1332(d)(2) inasmuch as the Defendants are citizens of the States of New York, North Carolina and Delaware and the members of the Class alleged herein include persons who are citizens of States other than New York, North Carolina and Delaware; the action is a putative class action pursuant to Federal Rule of Civil Procedure 23, and the amount in controversy exceeds the sum of $5 million, exclusive of interests and costs.

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

16.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

### Class Action Allegations

17.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a class (the "Class") consisting of all individuals in the United States who purchased *Aquafina* from the date of its introduction through the present (the "Class Period"). Excluded from the Class are defendants, any entity in which defendants have a controlling interest, and any of their subsidiaries, affiliates, and officers and directors. Plaintiffs reserve the right to amend the class definition, including the Class's possible division into subclasses, in order to obtain substantial justice for the wrongdoing asserted herein.

4

18.    The Class consists of hundreds of thousands, if not millions, of individuals who purchased *Aquafina*, not only within the States of which Plaintiffs are citizens, but the other States within the United States. Millions of bottles of *Aquafina* were sold during the Class Period. The numbers of Class members is so numerous that separate joinder of each member is impracticable. Numerosity is therefore satisfied.

19.    Plaintiffs' claims involve questions of law and fact common to the Class, because Plaintiffs and other members of the Class were similarly affected by Defendants' unlawful and wrongful conduct that is complained of herein.

20.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex, class and consumer litigation and, Plaintiffs have no conflict of interest with other Class members in the maintenance of this class action. Plaintiffs have no relationship with Defendants except as purchasers of Defendants' products. Plaintiffs will vigorously pursue the claims of the Class.

21.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    Whether the water marketed, labeled and sold as *Aquafina* was bottled from sources generally known as "tap water";

b.    Whether the label Defendants used to sell *Aquafina* misrepresented the source of the water and withheld information from and/or omitted to inform consumers on *Aquafina* labels that the water marketed, labeled and sold as *Aquafina* was bottled from sources of what is generally known as "tap water";

5

c.     Whether Defendants' misrepresentations and omissions, as alleged herein, enabled Defendants to exact unreasonable and inflated prices for its product by taking advantage of its position of superior knowledge;

d.     Whether Defendants' misrepresentations and omissions, as alleged herein resulted from negligent, reckless or intentional behavior;

e.     Whether Defendants' conduct respecting *Aquafina* violated state consumer protection and/or uniform deceptive acts and practices statutes in effect in the various States;

f.     Whether Defendants' misrepresentations and omissions, as alleged herein caused Defendants to be unjustly enriched when the totality of the circumstances are considered; and

g.     Whether Defendants' conduct constituted a violation of California's Song-Beverly Act.

22.     A class action is an appropriate and superior method for the fair and efficient adjudication of the controversy given the following factors:

a.     Common questions of law and/or fact predominate over any individual questions that may arise, and, accordingly, there would accrue enormous economies to both the courts and the Class in litigating the common issues on a class wide basis instead of on a repetitive individual basis;

b.     Class members' individual damage claims are too small to make individual litigation an economically viable alternative;

c.     Despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economics of scale inherent in litigating

6

similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation; and

      d.     No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage are common to the Class.

22.     Class certification is fair and efficient as well because prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which, as a practical matter, may be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

23.     Plaintiffs anticipate that there will be no difficulty in the management of this litigation, and means exist to address issues of damages as have been utilized in other class actions, including aggregate damages, claims processes and/or determination of any amounts of restitution.

**Factual Background**

24.     The bottled water industry in the United States reportedly accounts for revenues of approximately fifteen billion dollars annually. It is a highly competitive industry where beverage companies are continuously trying to market their water as cleaner, safer and/or healthier than rivals' water.

25.     *Aquafina* was first introduced in 1994 and gained national distribution with Pepsi in 1997.

7

26.     Prior to the public revelations as the true source of *Aquafina*, it was the best-selling brand of bottled water in the United States based on sales volume, and Defendants received revenues in 2006 of approximately $2.17 billion on sales of *Aquafina.*

27.     21 CFR 165.110 sets forth labeling standards for different types of bottled water.

28.     *Aquafina* purportedly meets the definition of "purified water" as set forth in 21 CFR 165.110(a)(2)(iv).

29.     Since its introduction, although not publicly disclosed until July 2007, the water used in *Aquafina* is sourced from public drinking supplies, commonly known or referred to as "tap water".

30.     Since its introduction, although not publicly disclosed until July 2007, the water used in *Aquafina* comes from "community water systems" as defined in 40 CFR 141.2.

31.     Under 21 CFR 165.110(a)(3)(ii), when bottled water comes from a community water source, the representations made on the label as to the water's source, must comply with and are limited to those statements contained in 21 CFR 165.110(a)(3)(ii). *Aquafina* labels went beyond those labeling requirements and principally labeled the product to state that the source of the water was "P.W.S."

32.     The FDA has determined that it does not deem source labeling of ingredient water from a municipal source as a material fact *unless*, as was the case here, labeling representations are made or suggested that the water possesses particular properties.

33.     The FDA discourages the use of the word "pure" on bottles of water derived from community water systems because said term is ambiguous and misleading.

8

34.     The FDA agrees that the use of certain graphics on a label of bottled water may be misleading to consumers if the source of the water is different than the source depicted or implied.

35.     Nevertheless, Defendants intentionally chose to prominently display a blue mountain range with the sun rising or setting over the mountain range with the slogan immediately below it, "Pure Water · Perfect Taste" and also stating on most labels that it was "BOTTLED AT THE SOURCE P.W.S." *Aquafina* labels did not indicate, state or imply the meaning of "P.W.S.", although the abbreviation actually stands for "Public Water Supply" or some similar phrase.

36.     Defendants' *Aquafina* labels, therefore, falsely implied that the origin of the water in *Aquafina* bottles was from a mountain source – a source more pure than "tap water".

37.     Defendants negligently, recklessly and/or intentionally misled consumers into believing that *Aquafina* was similar to, as good as and/or better than other rivals' water based upon, in part, the source of the water used in *Aquafina*.

38.     Defendants misrepresented *Aquafina* as mountain spring water because Defendants knew that such information would be considered important to consumers when they made decisions of whether to purchase Defendants' *Aquafina* water.

39.     On or about July 27, 2007, Defendants agreed to relabel *Aquafina* in order to include information that the source of the water was "tap water".

40.     On or about July 27, 2007, Defendant Pepsi admitted that the prior labeling of *Aquafina* was misleading to reasonable consumers when Pepsi, referring to the re-labeling of *Aquafina*, released a statement saying: "If this helps clarify the fact that the water originates from public sources, then it's a reasonable thing to do."

9

41.     Nevertheless, since July 27, 2007, upon information and belief, Defendants have continued to sell, or permitted the continued selling of, *Aquafina* with the prior labeling.

**FIRST CAUSE OF ACTION**
**FOR UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER STATE LAW**
**(By All Plaintiffs on Their Own Behalves And on Behalf of the Class)**

42.     Plaintiffs hereby incorporate by reference paragraphs 1-41 as if fully set forth herein.

43.     Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the bottling, manufacturing, marketing, labeling and sale of *Aquafina.*

44.     Defendants intentionally and knowingly caused the likelihood of confusion or of misunderstanding as to the source of its *Aquafina* bottled water.

45.     Defendants, through their unfair and deceptive marketing and labeling of *Aquafina,* unfairly represented to consumers that its product has characteristics, ingredients, benefits or qualities that it does not have.

46.     Defendants, through their unfair and deceptive marketing and labeling of *Aquafina,* used statements or illustrations in the *Aquafina* label which created a false impression of the grade, quality, value or origin of the goods offered, or otherwise misrepresented the goods in such a manner that later, on disclosure of the true facts, there is a likelihood that the consumer may have switched from the advertised goods to other goods.

47.     Defendants engaged in other acts or practices which are deceptive to the consumer or to any reasonable person.

48.     Had Defendants not engaged in the wrongful and deceptive conduct described above, Plaintiffs and members of the Class would not have purchased and/or paid the same

10

amount for *Aquafina*, and they have therefore proximately suffered injury in fact and ascertainable losses.

49.     Defendants engaged in their wrongful and deceptive conduct while at the same time obtaining sums of money from Plaintiffs and Class members for *Aquafina*.

50.     Defendants' deceptive, unconscionable or fraudulent representations and material omissions to consumers, including the failure to inform consumers of the true source of the water used in *Aquafina* and the mislabeling of the same, constituted unfair and deceptive acts and practices in violation of state consumer protection statutes. Defendants' failure to abide by their statutory duties has been or may be continuing.

51.     Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of state consumer protection statutes, including, but not limited to N.Y. Gen. Bus. Law §§ 349 *et seq.*; Tenn. Code Ann. §§ 47-18-101, *et seq.*; Tex. Bus. & Com. Code § 17.41, *et seq.*; and Cal. Civ. Code §1770, *et seq.* and Cal Bus. & Prof. Code § 17200, *et seq.*, as well as substantially similar statutes in effect in the other States and the District of Columbia.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class are entitled to a judgment that declaring that Defendants' actions have been in violation of their statutory duties, that provides injunctive relief in order to ensure continued wrongful and similar acts do not occur hereafter, and that provides compensatory, equitable, exemplary, treble and/or restitutionary damages as applicable according to law, attorneys' fees, and/or costs of suit.

11

## SECOND CAUSE OF ACTION
## FOR UNJUST ENRICHMENT
### (By Plaintiffs on Their Own Behalves And on Behalf of the Class)

53.     Plaintiffs hereby incorporate by reference paragraphs 1-41 as if fully set forth
herein.

54.     Defendants obtained monies from the marketing, labeling and/or sale of
*Aquafina* water that was, as they knew or reasonably should have known was mislabeled
because the label omitted that the source of the water was "tap water" and contained images
and/or words that implied that the source of the water was more pure and/or better than "tap
water" and/or the bottled water of Defendants' rivals.  Even though Plaintiffs purchased from
retailers, there was, necessarily, a flow of money from them, through the retail chain, to
Defendants.  Defendants obtain monies from the sale of and benefit by the sale of Aquafina
only because of the manner in which consumers purchase the product from retailers, such being
the retail chain necessarily permitting the sale (and for Defendants, profit from) of consumer
products.  The retailers play no role in the labeling of the Aquafina product.

55.     When considered under the totality of the circumstances regarding Defendants'
knowledge regarding *Aquafina,* Defendants have been unjustly enriched to the detriment of
Plaintiffs and the other members of the Class, as alleged above, by retention of consumer's
purchase monies received directly or indirectly. These unjust benefits were conferred on
Defendants by consumers as a direct result of the omissions and mislabeling made by
Defendants.

56.     Defendants' retention of some or all of the monies they have gained through their
wrongful acts and practices would be unjust considering the circumstances of their obtaining
those monies.

57.     Defendants should be required to disgorge their unjustly obtained monies and to

make restitution to Plaintiffs and the other members of the Class, in an amount to be

determined, of the monies by which they have been unjustly enriched.

### THIRD CAUSE OF ACTION
### FOR VIOLATION OF THE SONG-BEVERLY ACT,
### CALIFORNIA CIVIL CODE §1790, *ET SEQ.*
### (By Plaintiff Litschke on Her Own Behalf
### And on Behalf of That Portion of the Class Who Reside in California)

58.     Plaintiff Litschke hereby incorporates by reference paragraphs 1-41 as if fully set

forth herein.

59.     Plaintiff Litschke asserts the fourth Cause of Action individually, on behalf of

the common or general interest of that portion of the Class who reside in California for breach

of implied warranty under the Song-Beverly Act, Cal. Civ. Code §1790, *et seq.*

60.     *Aquafina* bottled water is a "consumer good" within the meaning of Cal. Civ.

Code § 1791(a).

61.     Defendants' implied warranty of merchantability arose out of and/or was

related to the sale to consumers of the bottled water.

62.     As set forth more fully above, Defendants failed to comply with their

obligations under the implied warranty of merchantability as defined in Cal. Civ. Code §

1791.1.

63.     Plaintiff Litschke and the California members of the Class are "persons",

"buyers" and/or "retail buyers" with the meaning of Cal. Civ. Code § 1791(b), have suffered

damages as a result of Defendants' failure to comply with their statutory warranty

obligations, and are entitled to recover damages under the Song-Beverly Act, including

damages pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

      1.     For an Order certifying the Class and any appropriate subclasses thereof under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiffs and their counsel to represent such Classes and subclasses as appropriate under Rule 23(g);

      2.     For the declaratory and equitable relief requested;

      3.     For compensatory, equitable, exemplary, treble and/or restitutionary damages according to proof and for all applicable statutory damages under N.Y. Gen. Bus. Law §§ 349 *et seq.*; Tenn. Code Ann. §§ 47-18-101, *et seq.*; Tex. Bus. & Com. Code § 17.41, *et seq.*; and Cal. Civ. Code §1770, *et seq.* and Cal Bus. & Prof. Code § 17200, *et seq.*, as well as substantially similar statutes in effect in the other States and the District of Columbia;

      4.     For compensatory, equitable, civil penalty damages according to proof and for all applicable statutory damages, costs and expenses, on behalf of that portion of the Class that resides in California, pursuant to the Song-Beverly Act, California Civil Code §1790, *et seq.*;

      5.     For an award of attorneys' fees and costs;

      6.     For prejudgment interest and the costs of suit;

      7.     For such other and further relief as this Court may deem just and proper.

14

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Date: May 7, 2008

Seth R. Lesser (SR 5560)
Andrew P. Bell (AB 1309)
LOCKS LAW FIRM PLLC
110 East 55th Street
New York, New York 10022
(212) 838-3333
www.lockslaw.com

Jeffrey A. Klafter (JK 0953)
KLAFTER & OLSEN LLP
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
(914) 997-5656
www.klafterolsen.com

Hunter J. Shkolnik (HS 4854)
RHEINGOLD, VALET, RHEINGOLD,
SHKOLNIK & McCARTNEY LLP
113 East 37th Street
New York, New York 10016
(212) 684-1880
www.rheingoldlaw.com

Richard J. Arsenault (*pro hac vice* to be filed)
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
Alexandria, Louisana 71301
(318) 487-9874

Ricky E. Wilkins (*pro hac vice* to be filed)
Sharon Harless Loy (*pro hac vice* to be filed)
THE LAW OFFICES OF RICKY E.
WILKINS
119 S. Main Street
Suite 500, Pembroke Square Building
Memphis, Tennessee 38103
(901) 322-4463

15

Gina C. Higgins (*pro hac vice* to be filed)
STOTTS, HIGGINS & JOHNSON
1470 Monroe Ave.
Memphis, Tennessee 38104
(901) 276-2500

Robert L.J. Spence, Jr. (*pro hac vice* to be filed)
SPENCEWALK, P.L.L.C.
One Commerce Square
Suite 2200
Memphis, Tennessee 38103
(901) 312-9160

Jonathan H. Cox (*pro hac vice* to be filed)
402 Main St., 3 South
Houston, Texas  77002
(713) 752-2300

C. Brooks Cutter (*pro hac vice* to be filed)
KERSHAW, CUTTER & RATINOFF, LLP
980 9th Street, 19th Floor
Sacramento, California 95814
(916) 448-9800

Nicholas J. Drakulich (*pro hac vice* to be filed)
JENNINGS & DRAKULICH, LLP
2002 Jimmy Durante Blvd., Suite 400
Del Mar, California 92014
(858) 755-5887

Attorneys for Plaintiffs

## AFFIDAVIT OF SERVICE

State of New York    )
                    )    ss.:
County of New York  )

Andrew P. Bell being duly sworn, deposes and says that I am an attorney in the offices of

Locks Law Firm, PLLC, that on May 7, 2008 I served the within **PLAINTIFFS'**

**CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT**

by email directed to defense counsel at the emails designated by them for the purpose of

service upon them of the preceding papers in this action, which was and now is a regular

communication. On May 8, 2008, I served the within **PLAINTIFFS'**

**CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT** by U.S. Mail

directed to defense counsel and the addresses designated by them for the purpose of

service upon them of the preceding papers in this action.

| | | |
|---|---|---|
| **Lawrence I. Weinstein**<br>Proskauer Rose LLP<br>1585 Broadway<br>New York, NY 10036 | **Louis M. Soloman**<br>Proskauer Rose LLP<br>1585 Broadway<br>New York, NY 10036 | **Michael Lazaroff**<br>Proskauer Rose LLP<br>1585 Broadway<br>New York, NY 10036<br>mlazaroff@proskauer.com |
| **Johnny W. Carter**<br>Susman Godfrey L.L.P.<br>1000 Louisiana<br>Suite 5100<br>Houston, TX 77002 | **James M. Parrott, V.**<br>Smith, Anderson, Blount,<br>Dorsett, Mitchell & Jernigan<br>2500 Wachovia Capitol Center<br>Raleigh, NC 27601 | **Patrick Dempsey**<br>Proskauer Rose LLP<br>1585 Broadway<br>New York, NY 10036<br>pdempsey@proskauer.com |
| **Donald Tucker**<br>Smith, Anderson, Blount,<br>Dorsett, Mitchell & Jernigan<br>2500 Wachovia Capitol Center<br>Raleigh, NC 27601<br>dtucker@smithlaw.com | | |

Sworn to before me this
8th day of May, 2008.

_____
ANDREW P. BELL

_Jennifer Russell_
NOTARY PUBLIC

Jennifer Russell
Notary Public State of New York
No. 01RU6128256
Qualified in New York County
Commission Expires May 2, 2009

# EXHIBIT C

Seth R. Lesser (SR 5560)
Andrew P. Bell (AB 1309)
LOCKS LAW FIRM PLLC
110 East 55th Street
New York, New York 10022
(212) 838-3333
www.lockslaw.com

Jeffrey A. Klafter (JK 0953)
KLAFTER & OLSEN LLP
1311 Marmaroneck Avenue
Suite 220
White Plains, New York 10605
(914) 997-5656

**JUDGE BRIEANT**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CIV 6815**

| | |
|---|---|
| Brian Fielman, on behalf of herself and all others similarly situated, | Civil Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT AND JURY DEMAND FOR TRIAL** |
| PEPSICO, INC., THE PEPSI BOTTLING GROUP, INC., and PEPSI BOTTLING VENTURES LLC, | |
| Defendants. | |

Plaintiff BRIAN FIELMAN, by and through his undersigned counsel, for himself and all

others similarly situated, hereby brings this Class action Complaint against Defendants PEPSICO

INC., THE PEPSI BOTTLING GROUP, INC. AND PEPSI BOTTLING VENTURES LLC

("Defendants"). Plaintiff makes the following allegations based upon his personal knowledge as

to his own acts, and upon information and belief as well as upon his attorneys' investigative

efforts as to Defendants' actions and misconduct as alleged herein:

1

## **Nature of The Action**

1.      In this class action lawsuit, Plaintiff seeks to obtain damages and/or compensatory

restitution for Defendants' wrongful and illegal sales and marketing of *Aquafina* bottled water

("*Aquafina*"), in that Defendants advertising, marketing and/or labeling of *Aquafina* failed to

inform consumers that the source of the water was public tap water, not water from an inherently

cleaner source, such as a mountain as implied in the logo on the *Aquafina* label.  Whether

through intentional, reckless, or negligent action, Defendants marketed and sold *Aquafina*

notwithstanding the fact that its content was undisclosed, mislabel, misleading.  As a result,

consumers like Plaintiff herein purchased *Aquafina* not knowing the water's true source and

accordingly have suffered harms sounding in their claims set forth below for (a) violations of

Uniform Deceptive Acts and Practices statutes (sometimes also referred to as "Consumer

Protection Statutes"); (b) breach of the implied warranty of merchantability; and (c) unjust

enrichment.

2.      Plaintiff further seeks declaratory and injunctive relief to prevent a reoccurrence

of such wrongful activity by Defendants.

## **Parties**

3.      Plaintiff Brian Fielman resides in Valley Stream, New York and is a citizen of the

State of New York.

4.      Defendant PepsiCo, Inc. ("Pepsi") is a corporation organized under the laws of the

State of North Carolina and has its principal place of business in Purchase, New York.

5.     Defendant The Pepsi Bottling Group, Inc. ("PBG") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Somers, New York.

6.     Defendant Pepsi Bottling Ventures LLC ("PBV") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Raleigh, North Carolina.

7.     PBG and PBV (hereinafter collectively "Pepsi Bottlers") are bottling companies affiliated with Pepsi, are two of Pepsi's "anchor bottlers" of *Aquafina* and other Pepsi products, and are primarily responsible for manufacturing, selling and distributing *Aquafina* in New York and throughout the United States.

8.     With respect to the conduct alleged herein, the acts and alleged wrongdoing of Defendants Pepsi and the Pepsi Bottlers may be imputed to each other inasmuch as they acted as the agents, alter-egos or co-conspirators of each other.

## Jurisdiction and Venue

9.     This Court has subject matter jurisdiction over this matter pursuant 28 U.S.C. § 1332(d)(2) inasmuch as the Defendants are citizens of the States of New York, North Carolina and Delaware and the members of the Class alleged herein include persons who are citizens of States other than New York, North Carolina and Delaware; the action is a putative class action pursuant to Federal Rule of Civil Procedure 23, and the amount in controversy exceeds the sum of $5 million, exclusive of interests and costs.

10.     Venue is proper in this district pursuant to 28 U.S.C. §1391.

11.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

### Factual Allegations of the Plaintiff

12.     On many occasions and for at least two to three years, Brian Fielman purchased *Aquafina* by the case and individual bottles as stores in his neighborhood, including but not limited to, Key Foods and King Kullen.

13.     Mr. Fielman believed, based upon Defendants' labeling of *Aquafina*, that the water used in it must have come from a cleaner, safer and special source.

14.     Mr. Fielman bought *Aquafina* in part because he believed that the water source it was from was cleaner, safer and special because the label indicated that it was "pure water".

15.     On or about July 28 or 29, 2007, Mr. Fielman discovered that the water in *Aquafina* came from general tap water, and was not from a water source that was any cleaner, safer or special.

16.     As a result of this discovery, Mr, Fielman believed he had been misled by Defendants into purchasing *Aquafina* and was angry and shocked.

### Class Action Allegations

17.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and a class (the "Class") consisting of all individuals in the United States who purchased *Aquafina* from the date of its introduction through the present (the "Class Period").   Excluded from the Class are defendants, any entity in which defendants have a controlling interest, and any of their subsidiaries, affiliates, and officers and directors.   Plaintiff

reserves the right to amend the class definition, including the Class's possible division into subclasses, in order to obtain substantial justice for the wrongdoing asserted herein.

18.     The Class consists of hundreds of thousands if not millions of individuals, not only within the State of New York, but also the other states in the United States.  Millions of bottles of *Aquafina* were sold during the Class Period.   Numerosity is therefore satisfied.

19.     Plaintiff's claims involve questions of law and fact common to the Class, because Plaintiff and other members of the Class were similarly affected by Defendants' unlawful and wrongful conduct that is complained of herein.

20.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel competent and experienced in class and consumer litigation and, in particular, this area of law, and Plaintiff has no conflict of interest with other Class members in the maintenance of this class action.  Plaintiff has no relationship with Defendants except as customers.  Plaintiff will vigorously pursue the claims of the Class.

21.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     Whether the water marketed and sold as *Aquafina* was bottled from sources of what is generally known as "tap water";

b.     Whether Defendants withheld information from and/or omitted to inform consumers on *Aquafina* labels that the water marketed and sold as *Aquafina* was bottled from sources of what is generally known as "tap water";

5

c.     Whether Defendants' withholding of information and/or failure to inform consumers as to the true source of the water marketed and sold as *Aquafina* resulted from negligent, reckless or intentional behavior;

d.     Whether Defendants' affirmatively promoted the water marketed and sold as *Aquafina* as being better fit for human consumption because of the "perfect" or more "pure" nature of the water's source;

e.     Whether Defendants' conduct respecting *Aquafina* violated New York GBL § 349, and the state consumer protection and/or uniform deceptive acts and practices statutes in effect in the various States;

f.     Whether Defendants' conduct breached the implied warranty of merchantability; and

g.     Whether Defendants' omissions in the labeling of *Aquafina* so as to conceal the true nature of the source of the water marketed and sold under the brand name *Aquafina* caused Defendants to be unjustly enriched when the totality of the circumstances are considered.

22.    A class action is an appropriate and superior method for the fair and efficient adjudication of the controversy given the following factors:

a.     Common questions of law and/or fact predominate over any individual questions that may arise, and, accordingly, there would accrue enormous economies to both the courts and the Class in litigating the common issues on a class wide basis instead of on a repetitive individual basis;

b.      Class members' individual damage claims are too small to make individual litigation an economically viable alternative;

c.      Despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation; and

d.      No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage are common to the Class.

23.     Class certification is fair and efficient as well because prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which, as a practical matter, may be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

24.     Plaintiff anticipates that there will be no difficulty in the management of this litigation, and means exist to address issues of damages as have been utilized in other class actions, including aggregate damages, claims processes and/or determination of restitutionary amounts.

**Factual Background**

25.     The bottled water industry in the United States reportedly accounts for revenues of approximately fifteen billion dollars annually.  It is a highly competitive industry where beverage

7

companies are continuously trying to market their water as cleaner, safer and/or healthier than rivals' water.

26. *Aquafina* was first introduced in 1994 and gained national distribution with Pepsi in 1997.

27. *Aquafina* is currently the United States' best selling brand of bottled water based on sales volume, and Defendants received revenues in 2006 of approximately $2.17 billion on sales of *Aquafina*.

28. Since its introduction, the water used in *Aquafina* is sourced from public drinking supplies, commonly known or referred to as "tap water".

29. Defendants' labels on *Aquafina* currently state: "Bottled at the source P.W.S.".

30. *Aquafina* labels do not indicate, state or imply the meaning of "P.W.S.", although the abbreviation actually stands for "Public Water Systems" or some similar phrase.

31. Defendants' "blue mountain labels" on *Aquafina* contain a logo of a sun rising or setting over a mountain range and contains the slogan "Pure Water Perfect Taste".

32. Defendants' blue mountain labels, therefore, implying that the origin of the water in *Aquafina* bottles is from a mountain source and/or a source more pure than either tap water or rivals' water and that *Aquafina*.

33. Defendants' website fails to inform consumers that the true nature of the source of the water marketed and sold as *Aquafina* is tap water.

34. Defendants negligently, recklessly and/or intentionally misled consumers into believing that *Aquafina* was similar to, as good as and/or better than other rivals' water based upon, in part, the source of the water used in *Aquafina*.

8

35.      Defendants failed to disclose tap water as the true source of *Aquafina* to consumers because Defendants knew that such information would be considered important to consumers when they made decisions of whether to purchase Defendants' *Aquafina* water.

36.      Defendants failed to disclose tap water as the true source of *Aquafina* to consumers because Defendants knew that such disclosure would be detrimental to the sales of Defendants' *Aquafina* water.

37.      On or about July 27, 2007, Defendants agreed to relabel *Aquafina* in order to include information that the source of the water was tap water.

38.      On or about July 27, 2007, Defendant Pepsi admitted that the prior labeling of *Aquafina* was misleading to reasonable consumers when Pepsi, referring to the re-labeling of *Aquafina*, released a statement saying: "If this helps clarify the fact that the water originates from public sources, then it's a reasonable thing to do."

## FIRST CAUSE OF ACTION
## FOR UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER STATE LAW
### (By Plaintiff on him own behalf and on behalf of the Class)

39.      Plaintiff hereby incorporates by reference paragraphs 1-38 as if fully set forth herein.

40.      Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the bottling, manufacturing, marketing, labeling and sale of *Aquafina*.

41.      Had Defendants not engaged in the wrongful and deceptive conduct described above, Plaintiff and members of the Class would not have purchased and/or paid the same

amount for *Aquafina,* and they have therefore proximately suffered injury in fact and ascertainable losses.

42.    Defendants' deceptive, unconscionable or fraudulent representations and material omissions to consumers, including the failure to inform consumers of the true source of the water used in *Aquafina* and the mislabeling of the same, constituted unfair and deceptive acts and practices in violation of state consumer protection statutes.

43.    Defendants engaged in their wrongful conduct while at the same time obtaining sums of money from Plaintiff and Class members for *Aquafina.*

44.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of state consumer protection statutes, including, but not limited to N.Y. Gen. Bus. Law §§ 349 *et seq.,* as well as substantially similar statutes in effect in the other States.

45.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class are entitled to a judgment that declaring that Defendants' actions have been in violation of their statutory duties, that provides injunctive relief in order to ensure continued wrongful and similar acts do not occur hereafter, and that provides compensatory damages, treble damages, attorneys' fees, and/or costs of suit.

**SECOND CAUSE OF ACTION**
**FOR BREACH OF IMPLIED WARRANTY**
**(By Plaintiff on him own behalf and on behalf of the Class)**

46.     Plaintiff hereby incorporates by reference paragraphs 1-45 as if fully set forth

herein.

47.     Defendants impliedly warranted that *Aquafina*, a mass consumer item which

Defendants manufactured, bottled, promoted, distributed and sold to the market for bottled water

to Plaintiff, was merchantable.

48.     *Aquafina* was not merchantable within the meaning of the law inasmuch as, by

virtue of the labeling when purchased by Plaintiff and the Class, it (a) could not pass without

objection in the trade under its description; (b) it was not adequately contained, packaged and

labeled as part of the transaction; and/or (c) it did not conform to the promises and affirmations

of fact made on the package and label for the game.  Therefore, Defendants breached the implied

warranties of merchantability when *Aquafina* was labeled, distributed, and sold to Plaintiff and

similarly situated persons.

49.     Any disclaimers of implied warranties are ineffectual as they were not provided to

Plaintiff or otherwise made known to Plaintiff, who were not informed of the material non-

compliance of the goods to the represented labeling.  In addition, any such disclaimers are

unconscionable under the circumstances.

50.     As a direct and proximate result of Defendants' breach of implied warranty,

Plaintiff has sustained economic losses and other damages for which he is entitled to

compensatory and/or equitable damages in an amount to be proven at trial.

11

## THIRD CAUSE OF ACTION
## FOR UNJUST ENRICHMENT
### (By Plaintiff on him own behalf and on behalf of the Class)

51.     Plaintiff hereby incorporates by reference paragraphs 1-50 as if fully set forth herein.

52.     Defendants obtained monies from the manufacture, labeling, distribution, marketing and/or sale of *Aquafina*, water that was, as they knew or reasonably should have known was mislabeled because the label omitted that the source of the water was tap water and contained images and/or words that implied that the source of the water was more pure and/or better than tap water and/or the bottled water of Defendants' rivals.  When considered under the totality of the circumstances regarding Defendants' knowledge regarding *Aquafina*, Defendants have been unjustly enriched to the detriment of Plaintiff and the other members of the Class, as alleged above, by retention of consumer's purchase monies received directly or indirectly.  These unjust benefits were conferred on Defendants by consumers as a direct result of the omissions and mislabeling made by Defendants.

76.     Defendants' retention of some or all of the monies they have gained through their wrongful acts and practices would be unjust considering the circumstances of their obtaining those monies.

77.     Defendants should be required to disgorge their unjustly obtained monies and to make restitution to Plaintiff and the other members of the Class, in an amount to be determined, of the monies by which they have been unjustly enriched.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

1.     For an Order certifying the Class and any appropriate subclasses thereof under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiff and his counsel to represent such Classes and subclasses as appropriate under Rule 23(g);

2.     For the declaratory and equitable relief requested;

3.     For compensatory, equitable and/or restitutionary damages according to proof and for all applicable statutory damages under New York GBL § 349 *et seq.* and under the consumer protection legislation of the other states and the District of Columbia;

4.     For an award of attorneys' fees and costs;

5.     For prejudgment interest and the costs of suit;

6.     For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Date:   July 30, 2007

Seth R. Lesser (SR 5560)
Andrew P. Bell (AB 1309)
LOCKS LAW FIRM PLLC
110 East 55th Street
New York, New York 10022
(212) 838-3333
www.lockslaw.com

Jeffrey A. Klafter (JK 0953)
KLAFTER & OLSEN LLP
1311 Marmaroneck Avenue
Suite 220
White Plains, New York 10605
(914) 997-5656

Attorneys for Plaintiff

# EXHIBIT  D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CHICAGO FAUCET SHOPPE, INC., on behalf of itself and all others similarly situated, | : : : : : | Civil Action No. 1:12-cv-08119 |
| Plaintiff, | : : | |
| v. | : : | |
| NESTLÉ WATERS NORTH AMERICA INC., | : : : | |
| Defendant. | : : : | |

## DECLARATION OF JOHN HUECKSTAEDT

I, JOHN HUECKSTAEDT, make the following Declaration under
penalty of perjury:

1.      I have personal knowledge of the facts stated herein, and I am
competent to testify if called upon as a witness herein.

2.      I am the National Technical Manager-Supply Chain Direct (Home
& Office) of Nestlé Waters North America Inc. ("NWNA").  From October, 2008 until
March, 2011, I was the Factory Manager for NWNA's facility in Woodridge, Illinois,
the facility where Nestlé produces its 5-gallon bottles of Ice Mountain® brand bottled
water.  In these capacities, I am knowledgeable about NWNA's Ice Mountain® brand
5-gallon bottles and the labels which are affixed to and are part of those bottles.

3.      Attached hereto as "Exhibit A" is a true and correct copy of the label (#135-138, Exhibit A to NWNA's Memorandum of Law In Support of Defendant's Motion to Dismiss the Complaint ("Motion")) that appeared on the cap of the Ice Mountain® 5-gallon bottle of water sold to home and office customers in Illinois during the period January 1, 2008 to April, 2009.

4.      Attached hereto as "Exhibit B" is a true and correct copy of the label (#135-231, Exhibit B to Motion) that appeared on the cap of the Ice Mountain® 5-gallon bottle of water sold to home and office customers in Illinois during the period April, 2009 to May, 2010.

<u>CERTIFICATION UNDER SECTION 1746</u>

I declare under penalty of perjury under the laws of the United States of America that the foregoing Declaration is true and correct.

Dated: January 2 , 2013                   _John Hueckstaedt_
                                          JOHN HUECKSTAEDT

# EXHIBIT A



Tolerance of die ± .03125

Prints
PMS 3425

.3125

2" ± 0.015"

.25"

1.900"

1.625"

1.9375"
± .03125

sensor mark will print to the web edge

space between die is 5/16"

#135-138

# EXHIBIT B



#135-231