**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE CHICAGO FAUCET SHOPPE, INC., on )
behalf of itself and all others similarly situated, )
                                           )
                      Plaintiffs, )
                                           )    No. 12 C 08119
               v.                              )
                                           )    Judge John J. Tharp, Jr.
NESTLÉ WATERS NORTH AMERICA INC., )
                                           )
                 Defendants. )

## MEMORANDUM OPINION AND ORDER

       This putative class action alleges a violation of the Illinois Consumer and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. ("ICFA"), and the materially similar consumer protection statutes of other states. The plaintiff, Chicago Faucet Shoppe, Inc., on behalf of itself and a class of other purchasers of Ice Mountain®[1] 5-gallon bottled water, alleges that defendant Nestlé Waters North America, Inc. committed unfair and deceptive trade practices in violation of the ICFA by intentionally failing to disclose on its website, invoices, and delivery trucks, the fact that Ice Mountain 5-gallon bottled water is resold municipal tap water and not natural spring water. Chicago Faucet allegedly would not have purchased the Ice Mountain 5-gallon bottled water had Nestlé Waters disclosed that the 5-gallon water was not natural spring water. The complaint also alleges that Nestlé Waters was unjustly enriched because its failure to disclose the true source of the water allowed it to charge a premium for inferior water. Nestlé Waters moves to dismiss the complaint on numerous grounds. For the reasons that follow, the court concludes

---

[1] "Ice Mountain" is a registered trademark of Nestle Waters. For ease of reading the registered trademark symbol will not be used in the balance of this opinion.

that the plaintiff's claim is largely preempted, and to the extent that it is not, plaintiff fails to plead a valid claim.

## BACKGROUND

Nestlé Waters sells bottled water in the United States under various brand names, including Ice Mountain, which it sells in Illinois, Indiana, Iowa, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, and Wisconsin. Ice Mountain bottled water is available in different serving sizes, such as eight-ounce bottles and five-gallon jugs. Five-gallon jugs for delivery to the consumer's home or office can only be purchased by phone or through a website, www.icemountainwater.com. One of Nestlé Waters' marketing websites stated that "[e]very 3-4 weeks you'll have pure, refreshing spring water in 5-gallon bottles or cases delivered right to your door." Compl. Dkt. #1 ¶ 29, & Ex. D. Another website displayed a picture of a five-gallon jug accompanied by the language "Convenient Home Delivery" and "100% Natural Spring Water." Nestlé Waters' websites did not disclose anywhere that the water in its Ice Mountain five-gallon jugs was municipal tap water and not natural spring water.

The complaint alleges that, in 2008, after viewing the website www.icemountainwater.com, an officer of Chicago Faucet began purchasing Ice Mountain five-gallon bottled water for the company. The officer purchased the water by telephone and believed that the water being purchased was "100% Natural Spring Water." The bottles were delivered to the plaintiff by trucks displaying the Ice Mountain Natural Spring Water logo, and the plaintiff received monthly billing invoices with the "Ice Mountain Natural Spring Water" logo on them. In July 2012, some employees of the defendant informed the plaintiff for the first time that the five-gallon bottled water was not spring water. Chicago Faucet immediately stopped purchasing the five-gallon bottled water from Nestlé Waters, and it would not have purchased them to begin

with had it known that the water was not 100% natural spring water but rather was sourced from municipal water systems.

Based on these allegations, Chicago Faucet contends that Nestlé Waters deceptively marketed its five-gallon bottles of municipal tap water, in violation of the ICFA. The case was originally brought in the Circuit Court of Cook County, and Nestlé Waters removed it to this Court.[2] Nestlé Waters now moves to dismiss the entire complaint on the following grounds: (1) the plaintiff lacks Article III standing, as it has not alleged a causal connection between Nestlé Water's conduct and plaintiff's claimed injury, *see* Fed. R. Civ. P. 12(b)(1); (2) the plaintiff's state-law claim is expressly preempted by the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 3-1 *et seq*. Nestlé Water's nondisclosures of the source of the 5-gallon bottled water are not actionable under the ICFA's safe-harbor provision, as they were specifically authorized by federal regulations; (4) the ICFA claim is barred by the three-year statute of limitation; (5) there can be no unjust enrichment claim because there was a contract governing the two parties' relationship; (6) plaintiff's claims should be barred by the UCC's safe-harbor provision, 810 ILCS 5/2-607(3)(a); (7) plaintiff's claims are barred by the voluntary payment doctrine; and (8) the plaintiff has not alleged facts plausibly showing that it was actually deceived by Nestlé Waters' alleged conduct in violation of the ICFA.

---

[2] Chicago Faucet did not contest the removal of the case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), which appears appropriate as the removal notice alleges that: (i) members of the putative class, including Chicago Faucet, are citizens of states other than Delaware and Connecticut, where Nestlé Waters is incorporated and has its principal place of business, respectively; (ii) this is a class action in which there are more than one hundred members of the putative class; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

**DISCUSSION**

The ICFA makes it unlawful to use deception or fraud in the conduct of trade or commerce, and anyone who suffers "actual damage" as a result of any other's violation of the ICFA is entitled to bring an action. *See* 815 ILCS 505/2, 505/10A. A cause of action under the ICFA has five elements; a plaintiff must establish that: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey v. Public Storage, Inc*., 918 N.E.2d 265, 277 (Ill. App. Ct. 2009); *see Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005).

When considering a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *E.g., Yeftich v. Navistar, Inc*., 722 F.3d 911, 915 (7th Cir. 2013) (Rule 12(b)(6) motion); *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012) (Rule 12(b)(1) motion to dismiss for lack of standing). Exhibits attached to a complaint become part of the pleadings, *see* Fed. R. Civ. P. 10(c), and can be considered on a motion to dismiss. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Therefore, the plaintiff's Exhibits A through D, which are screenshots websites purportedly maintained by the defendant, are properly before the Court, whether they support or undermine the plaintiff's claims. *See id*. Whether the additional materials submitted by the parties can be considered will be addressed as necessary.

In deciding the motion, the Court will consider the threshold issues first: (1) whether the plaintiff has Article III standing; (2) whether the plaintiff's ICFA claim is time-barred; and (3) whether the plaintiff's state law claim is preempted by federal law.

### A.    Standing

Nestlé Waters first contends that Chicago Faucet lacks Article III standing, "which requires a plaintiff to show an injury-in-fact that is fairly traceable to the defendant's conduct and that could likely be redressed by a favorable court decision." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013); *Scanlan* 669 F.3d at 842. Nestlé Waters contends that Chicago Faucet fails to allege any causal connection between its injury and Nestlé Waters' conduct. That is, the plaintiff "has not pled facts showing that it read and was actually deceived by a specific misrepresentation or nondisclosure as to the identity of the source of Ice Mountain 5-gallon bottled water when it purchased the product in 2008."

In its complaint, however, the plaintiff stated that it began to purchase Ice Mountain 5-gallon bottled water "after viewing the website www.icemountainwater.com." The complaint further alleges that the defendant omitted the information of the source of the Ice Mountain 5-gallon bottled water on its websites while displaying misleading logos and statements, which led the plaintiff to believe that the Ice Mountain 5-gallon bottled water was spring water.  Compl. Dkt. #1 ¶¶ 28, 34-36. The plaintiff was injured because it would not have purchased the Ice Mountain five-gallon bottled water had it known that it was municipal tap water instead of 100% natural spring water.  *Id.* ¶ 62. The injury, which was financial in nature, was complete at the time of purchase, because—as a result of Nestlé Waters' deceptive conduct—Chicago Faucet allegedly paid more than it otherwise would have for the water. These allegations suffice to allege an injury and causation for purposes of Article III standing. *See In re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 751 (7th Cir. 2011); *Muir v. Playtex Products, LLC*, ---F. Supp. 2d----, 2013 WL 5941067, at *3 (N.D. Ill. 2013), and cases cited therein.

Nestlé Waters' argument—that the plaintiff fails to specifically plead that it read and was actually deceived by a specific misrepresentation or nondisclosure before purchasing the water—will resurface, appropriately, in conjunction with its challenge to the complaint under Rule 9 and Rule 12(b)(6). But Chicago Faucet sufficiently alleges injury and causation for purposes of Article III standing.

### B.    Timeliness

Nestlé Waters also contends that Chicago Faucet's ICFA claim, even if not preempted by federal law, is time-barred because the three-year statute of limitations began to run in January 2008 when the plaintiff received its first order of the Ice Mountain five-gallon bottled water. According to the defendant, when the plaintiff first received the water, it should have viewed the cap labels on the bottles as well as the invoices accompanying the products, both of which identified the 5-gallon bottled water as "drinking water" and not natural spring water. Nestlé Waters argues that plaintiffs were therefore on notice of the water's provenance at that time. Chicago Faucet alleges that it did not know that the source of the Ice Mountain five-gallon bottled water was municipal tap water instead of spring water until an employee ordering the same product for home delivery was told in July 2012, two months before the case was filed. Compl., Dkt. # 1 ¶ 38. It therefore argues that its cause of action did not accrue until it learned the true source of the water.

For a fraud action under the ICFA, the statute of limitations is three years. 815 ILCS 505/10a(e) (West 2002). The cause of action accrues "when the plaintiff 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'" *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981)).

The statute of limitations is an affirmative defense and can be grounds for dismissal only where the allegations in the complaint itself set forth everything necessary to establish the defense. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). "[A] plaintiff may state a claim even though there is a defense to that claim," and therefore "the mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films*, 682 F.3d at 690.

Here, the complaint does not unambiguously set forth dates that demonstrate untimeliness. Although Chicago Faucet placed its first order in January 2008, the complaint clearly alleges that no one at Chicago Faucet knew that their bottled water was not spring water until July 2012. The defense therefore turns on whether Chicago Faucet "reasonably should have known" that fact upon viewing the label and invoice, copies of which are attached as exhibits to the motion to dismiss. Chicago Faucet, however, contends that this evidence cannot be considered; it further disputes the existence of those labels, as well as the authenticity of the invoices provided by the defendant, which plaintiff states are "inaccurate and altered," not the actual invoices that were sent to plaintiff, which "repeatedly referenced 'spring water.'" Mem., Dkt. # 25 at 12.

Because the statute of limitations defense depends on extrinsic evidence that has not been properly authenticated and that the plaintiff disputes, it cannot be resolved on a motion to dismiss. Moreover, even assuming that both the bottles' labels and the invoices identified the product as "drinking water," the Court would not conclude as a matter of law that Chicago Faucet should have understood that "drinking water" and "spring water" are mutually exclusive, particularly where this argument has not been made or supported by Nestlé Waters.

### C. Preemption

Next, Nestlé Waters contends that Chicago Faucet's fraud claim is preempted by the FDCA. Federal law can preempt state or local laws in three different ways: express preemption, field preemption, and conflict preemption. *Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). "Express preemption," the means of preemption Nestlé Waters asserts here, occurs when a federal statute explicitly states that it overrides state or local law." *Id.* (citing *Hoagland v. Town of Clear Lake,* 415 F.3d 693 (7th Cir. 2005), internal quotation marks omitted.) The defendant relies on this provision of the FDCA:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce — (1) any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g) of this title.

21 U.S.C. §343-1(a)(1). The Act also precludes states from imposing "any requirement respecting any claim of the type described in section 343(r)(1) of the FDCA ... made in the label or labeling of food that is not identical to the requirement of section 343(r)." 21 U.S.C. § 343 –1(a)(1)(5). Thus, the FDCA expressly overrides state or local laws that regulate a subject of a "standard of identity" that has been established by the FDCA, and preempts state or local law regulating the labeling of food (a term that includes bottled water, *see* 21 C.F.R. § 165.110(a)(2)). A state can impose requirements that are identical to those imposed by the FDCA, but not different from or additional to those requirements. *See Turek v. General Mills Inc.,* 662 F.3d 423, 426 (7th Cir. 2011); *Vermont Pure Holdings Ltd. v. Nestlé Waters North America Inc.*, 2006 WL 839486, at *5 (D. Mass 2006).

In the complaint, Chicago Faucet primarily alleges that it was deceived by Nestlé Water's omission of material fact—the failure to disclose the source of the bottled water. In other words, Chicago Faucet would *require* Nestlé Waters to disclose the source of the five-gallon Ice Mountain bottled water. But under section 343-1(a)(1), if the standard of identity for the bottled water does not require the disclosure of source information, any state law claim seeking to impose liability for a failure to do so is expressly preempted. *See In re PepsiCo Inc. Bottled Water Marketing and Sales Practices Litigation,* 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) ("*Pepsico*").

As explained by the court in the litigation challenging, among other things, Pepsico's failure to inform consumers of the source of its Aquafina-branded bottled water, when it comes to "purified water," (a specific subgroup of bottled waters, *see* 21 C.F.R. § 165.110(a)(2)(iv)), the FDCA does not require disclosure of the source. Although that disclosure is required "when bottled water comes from a community water system," "purified water" is specifically exempt from that requirement. 21 C.F.R. §165.110(a)(3)(ii); 21 C.F.R. §165.110(a)(2)(iv). During the rulemaking process, the FDA considered but rejected a disclosure requirement for purified water, ultimately concluding that consumers purchasing that category of water were concerned with purity, not sourcing. Therefore, the *Pepsico* court concluded that the FDCA expressly preempted the plaintiffs' state-law claims that impose a requirement on purified water that was not identical, and indeed, conflicted with, the requirements of the Act. *See PepsiCo,* 588 F. Supp. 2d at 535.

Chicago Faucet attempts to distinguish *Pepsico*, and to sidestep this result, by arguing that its claim targets Nestlé Waters for its omitting source information in *marketing materials* on its website and invoices, and therefore does not seek to impose any *labeling* requirements on Nestlé Waters about the source of the five-gallon bottled water. But the distinction is both

illusory and irrelevant. It is illusory because labeling *is* marketing. *United States v. Kordel*, 164 F.2d 913, 915 (7th Cir. 1947) ("Most, if not all, labeling is advertising."), *aff'd* 335 U.S. 345 (1948); *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, 2006 WL 952032, *2 (N.D. Ill. April 12, 2006) ("There is some overlap between labeling and marketing. Statements can be, and usually are, both advertising and labeling."). In this regard, it is noteworthy that the "marketing" that Chicago Faucet targets consisted largely of web pages depicting the labels on Ice Mountain's five-gallon bottles.

Chicago Faucet's purported distinction is in any event irrelevant because the FDCA's broad preemption provision prohibits states from imposing *any* requirement "for a food which is the subject of a standard of identity" that is not identical to the federal standard. *See* 21 U.S.C. § 343-1(a)(1). The following subsection, § 343-1(a)(2), applies just to labeling, confirming that subsection (a)(1) means what it says and extends to efforts to impose requirements beyond the label. Chicago Faucet's lawsuit seeks to impose a disclosure "requirement" via the ICFA. That is contrary to the "any requirement" provision in the FDCA; state law cannot be used to fill what private litigants perceive to be gaps in the regulatory requirements imposed by federal law.

Moreover, as the *Pepsico* court explained, the FDA anticipated that the marketing and advertising associated with bottled water could potentially mislead consumers into believing that bottled water sourced from municipal supplies was actually "spring water," but it still determined that such concerns are irrelevant in the context of purified water. *See* 588 F. Supp. 2d at 536-37 ("while it is clear that the FDA contemplated that marketing techniques could potentially mislead consumers into believing that bottled water sourced from municipal supplies was actually 'spring water,' it is also evident that the FDA determined that such concerns are irrelevant in the context of purified water"); *see also Turek*, 662 F.3d at 427 (affirming dismissal of action brought

10

against food companies for marketing and selling food products in violation of the ICFA based on food companies' compliance of the FDCA's labeling requirement). Chicago Faucet's contention that a state is permitted to impose a non-identical requirement on an FDA-regulated food product so long as that requirement applies only in the context of marketing, not labeling, is simply untenable in the context of purified water.[3]

Accordingly, the FDCA expressly preempts Chicago Faucet's claim that failing to disclose the source of the Ice Mountain water it purchased is unlawful if—and only if—the Ice Mountain water plaintiff received is "purified water" within the meaning of the FDCA's regulations, as Nestlé Waters contends in its motion to dismiss. Nestlé Waters asserts that water in the five-gallon Ice Mountain jugs was produced through reverse osmosis; if true, it is therefore "purified water" as defined by 21 C.F.R. § 165.110(a)(2)(iv). It supports this assertion with evidence in the form of schematic diagrams of bottle-top labels copyrighted in 2002 depicting the phrase "Drinking Water Purified By Reverse Osmosis." *See* Mem. Exh. A, Dkt. # 20-1.

The problem is that this material is extrinsic to the complaint. The complaint—perhaps artfully—does not expressly state that the water was "purified," but no matter. There is no actual dispute about whether the water in the bottles was purified. In opposing preemption, Chicago Faucet argues that the FDCA's purified water standards do not preempt its claim because they are labeling (rather than marketing) standards—not because the water in question is something other than "purified water." Moreover, it is difficult to imagine a basis upon which the plaintiff

---

[3] Chicago Faucet's reliance on *Zapka v. Coca-Cola Co*., 2001 WL 1558276 (N.D. Ill. 2001)—in which the plaintiff claimed that Coca-Cola violated the ICFA by marketing Diet Coke as sweetened with aspartame and NutraSweet when the fountain syrup also contained saccharin—is wholly misplaced. Coca-Cola argued that its compliance with federal labeling laws was a complete defense pursuant to the specific provision of the ICFA exempting from liability any action "specifically authorized" by federal law. *See* 815 ILCS 505/10b (2001). The court rejected the argument because FDCA did not "specifically authorize" the marketing. *See id*. at *5. There was no issue of express preemption by the FDCA in that case.

could dispute the bottles' contents; the parties certainly agree that it was not "spring water," and Nestlé Waters is in the superior position to know. Under these circumstances, it is essentially a stipulated fact that the "resold municipal tap water" described in the complaint was produced by reverse osmosis, and the Court can take notice of it in resolving the motion. *See Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n.3 (7th Cir. 1997) (Where both parties agreed on two facts outside of the pleadings, it was "permissible for the district court to take them as stipulated" on motion to dismiss). Because there is no dispute that the five-gallon bottles contained water purified by reverse osmosis, the Court concludes that any claim that would require disclosure of the source of the purified water is preempted.

But although the complaint focuses primarily on the fraudulent omission of the source of the water, Chicago Faucet's allegations nevertheless allow for the possibility of a valid claim on another theory of fraud. Specifically, the complaint can be read to allege that Nestlé Waters falsely identified its purified Ice Mountain water as "spring" water. Exhibit D of the complaint, a printout of a Nestlé Waters marketing website, contains the statement: "Every 3-4 weeks you'll have pure, refreshing *spring water in 5-gallon bottles* or cases" (emphasis added). According to the complaint, this is a false statement because Nestlé Waters does not in fact sell Ice Mountain "spring water" in five-gallon bottles. The plaintiff also alleges: "Nestlé Waters' website also contains a picture of 5-gallon jug with the promises of 'Convenient Home Delivery' and '100% Natural Spring Water.'" It is undisputed that the five-gallon jugs do not contain "100% natural spring water."

Affirmative misrepresentations about the provenance of the water in the five-gallon jugs might give rise to a claim that could survive preemption. "Spring water" is expressly defined in 21 C.F.R. § 165.110(a)(vi) in a manner that excludes purified water from a municipal source, and

under 21 U.S.C. § 343(g), food is "misbranded" if it purports to be or is represented as a food for which a standard of identity has been established, "unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard." A claim based upon the misuse of the term of art "spring water" to describe purified water is therefore consistent with the terms of the FDCA's prohibition on misbranding and might not be preempted.

The Court hedges on this point for two reasons because, as already stated, the focus of the briefing has been on the plaintiff's fraud-by-omission theory; neither party directly addressed the argument sketched out above. Further, notwithstanding the pair of allegations about affirmative misrepresentations in the complaint, the plaintiff has all but disavowed a misrepresentation theory of fraud. In its response brief, the plaintiff takes issue with Nestlé Waters' argument that misrepresentations are not alleged with particularity: "Ignoring that the complaint alleges a claim for *omission of material facts* under ICFA, Nestlé claims Plaintiff fails to plausibly state a claim under Rule 9(b) and lacks standing under cases that analyze ICFA claims based on misrepresentations. But even under Nestlé's authority, which analyzes *claims not brought here*...." Mem., Dkt. # 25 at 5-6 (emphasis added).

The Court will not force a theory of relief on the plaintiff that it cannot, or does not wish to, assert. But neither will the Court grant a motion to dismiss based only upon the plaintiff's failure to specify an appropriate legal theory. A complaint need not set forth any theory of relief, and therefore, asserting an incorrect (or preempted) one is not fatal to the complaint if the facts nevertheless state a claim under a recognized legal theory. *See Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir. 2012). Nothing in *Twombly* or *Iqbal* changes that tenet: those cases "do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories."

*Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules"). Accordingly, a motion to dismiss should be granted only when the facts in the plaintiff's complaint, taken as true, do not state a plausible claim under any "recognized legal theory." *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012).

Thus the question remains whether, despite the preempted omission-of-source claim, the plaintiff nevertheless states a claim for relief on another theory of fraud.

### D.    Pleading Requirements

Nestlé Waters again seizes on the plaintiff's lack of specificity in arguing that the ICFA claim must be dismissed under Rule 12(b)(6) and Rule 9(b), which governs fraud claims. Nestlé Waters contends that Chicago Faucet fails to state a valid claim because it alleged no facts suggesting that the plaintiff had actually read the alleged misleading statements, that the websites that contained the misleading statements actually existed in 2008, or that the plaintiff was actually deceived by any websites that it allegedly viewed before the purchase.

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Yeftich v. Navistar, Inc*., 722 F.3d 911, 915 (7th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

Court must accept as true all well-pleaded facts and draw reasonable inferences in the plaintiff's favor, but statements of law or unsupported conclusory allegations need not be taken at face value. *Yeftich*, 722 F.3d at 915.

Moreover, when a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 441 (7th Cir. 2011); *Davis*, 396 F.3d at 883.[4] "Rule 9(b) requires that facts such as 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff' be alleged in detail." *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) (quoting *Bankers Trust Co. v. Old Republic Ins. Co*., 959 F.2d 677, 683 (7th Cir. 1992)).

The plaintiff alleges in its complaint, and emphasizes in its response to the defendant's motion to dismiss, that in 2008 it viewed one of the defendant's websites, which omitted the source of the Ice Mountain five-gallon bottled water, and that in purchasing the products, the plaintiff relied upon such omission. Compl. Dkt. # 1 ¶ 35; Mem., Dkt. #25 at 5-6. However, since the plaintiff's failure-to-disclose claim is preempted by the FDCA, these allegations do not get Chicago Faucet across the threshold of Rule 9(b). And, in any event, the complaint is opaque about who viewed the website, which website was viewed, and when, among other details.

---

[4] The Seventh Circuit has held that when the ICFA claim is for "unfair conduct" rather than "fraud," the particularity requirement of Rule 9(b) does not apply. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.,* 36 F.3d 663, 669-70 (7th Cir. 2008). Here, however, the complaint specifically alleges deliberate misrepresentations and omissions, *i.e.*, fraud. *See, e.g*., Compl. ¶¶ 45, 57-61. These are the sort of ICFA claims that have been subjected to Rule 9(b)'s requirements. *See Pirelli*, 631 F.3d at 446-447.

As to a potential claim based upon a misbranding theory of fraud, allegations of conduct suggestive of misbranding appear twice in the plaintiff's complaint: first, in paragraph 29 and Exhibit D, Chicago Faucet alleges that the defendant stated on its website that "spring water" was available in five-gallon bottles; second, in paragraph 30, the plaintiff alleges that one of the defendant's websites contained a picture of a five-gallon jug with the promise of "100% Natural Spring Water." In addition, in response to the motion to dismiss, Chicago Faucet produced the affidavit of Amy Sherman, its employee who ordered and paid for the bottled water, and the copies of the invoices that Chicago Faucet received.[5] Although, as Nestlé Waters points out, none of the invoices directly associates the term "spring water" with the five-gallon bottles (apparently Chicago Faucet occasionally received half-liter bottles of genuine "spring water"), the invoices are all stamped with the logo "Ice Mountain Natural Spring Water," even when the only product being supplied was the five-gallon purified water, which under the FDCA cannot be labeled as "spring water." This lends at least some plausibility to the plaintiff's claim that Nestlé Water advertised all of its Ice Mountain water as "spring water."

But even though there are some allegations that are consistent with a fraud claim based upon misbranding,[6] the complaint ultimately falls short of setting forth a plausible claim. *See Twombly,* 550 U.S. at 558 (stating a claim requires pleading "allegations plausibly suggesting (not merely consistent with)" entitlement to relief). The complaint lacks any allegations that the websites described in paragraphs 29 and 30 were the same one(s) viewed by Chicago Faucet's

---

[5] Although a defendant moving to dismiss may rely on only a small universe of materials, a plaintiff can oppose a Rule 12(b)(6) motion by elaborating on its factual allegations and submitting evidence, so long as the new material is consistent with the pleadings. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[6] Particularly where the plaintiff has eschewed a misrepresentation theory of fraud, the Court will not prejudge whether, if true, such allegations would constitute fraud, but it notes that the FDCA includes as "misbranding" providing misleading information on the label *or* advertising of a regulated product. *See* 21 U.S.C. § 321(n).

agent before purchasing the water. The complaint states only that an officer of Chicago Faucet purchased the water "after viewing the website www.icemountainwater.com." Compl. ¶ 35. The misrepresentation described in paragraph 29 and Exhibit D, however, does not appear to have come from www.icemountainwater.com (its web address is difficult to decipher), and paragraph 30 cites a website called "www.waterdeliveryoffers.com." Therefore, there is nothing in the complaint to link Chicago Faucet's purchase of the water to the websites that contain the alleged misrepresentations, and no basis on which to infer that Chicago Faucet saw, let alone was deceived by, any misbranding before purchasing the water. Therefore Chicago Faucet does not plausibly allege that the misrepresentations it described were ever communicated to it, let alone how and when that occurred. And understanding the circumstances under which the websites were viewed is imperative to providing the defendant with proper notice under Rule 9 of the nature and circumstances of the fraud claim against it, as Chicago Faucet does not claim any person misrepresented the source of the water in its conversations with Nestlé Waters, or that the water it received was labeled "spring water."[7] Moreover, the plaintiff makes clear in its brief that

---

[7] Chicago Faucet's contention, in response to the motion to dismiss, that it has done all it can without additional discovery to reproduce a 2008 version of www.icemountain.com through publicly available methods, is beside the point. *See, e.g.,* Sadler Decl., Dkt. # 25-2. Reproducing the website is not required to state a claim. But Chicago Faucet alleges (1) that it viewed a single website; and (2) that two *other* websites misrepresent the drinking water as "spring water"; these two factual allegations do not allow a reasonable inference that Chicago Faucet was deceived by false statements about the source of the water on those websites. This is problematic not only for any claim based on a misbranding claim Chicago Faucet might seek to assert individually; it also highlights the substantial difficulty that it may face in attempting to assert such a claim on behalf of an entire class of purchasers when class certification requires, among other conditions, that questions common to the class predominate individualized issues like reliance on the alleged misrepresentations. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011) (observing that, in the absence of the "fraud on the market" presumption of reliance, Rule 23(b)(3)'s predominance requirement would generally be "an insuperable barrier to class certification" in securities fraud cases since individual investors would be required to prove reliance on the alleged misrepresentations).

the only deception it alleges with respect to the website viewed in 2008 was the "material omission" of the fact that the water was purified tap water. *See* Mem., Dkt. # 25. There are therefore no facts in the complaint from which the reasonable inference can be drawn that plaintiff was deceived by misstatements as opposed to the omission of source information. It is possible that such facts could be pleaded, but given the predominant focus of the allegations and plaintiff's arguments on the omission of source information, they have not been set forth with sufficient particularity.

### E.     Unjust Enrichment

Chicago Faucet also seeks money damages on a theory of unjust enrichment. Nestlé Waters argues that the plaintiff's unjust enrichment claim should be dismissed because the transaction between the plaintiff and the defendant was governed by an explicit contract. It supplies as an exhibit a copy of what it says is the parties' written contract—a one-year service agreement dated January 30, 2008. Dkt. # 20-1, Ex. C.

 "To state an unjust enrichment claim under Illinois law, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp. Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Because the theory essentially implies a contract where one does not exist to avoid unjust results, "recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013).

Chicago Faucet protests that the "contract" is not part of the pleadings and cannot be considered with the motion to dismiss. Nestlé Waters contends it was entitled to attach the

contract because that the plaintiff made reference to it in the complaint. Specifically, it points to paragraph 34, which alleges: "In 2008, The Chicago Faucet Shoppe began purchasing Ice Mountain 5-gallon bottled water for monthly delivery to its Chicago, Illinois office." But even if this statement counts as a reference to a contract (although it includes no mention of any written agreement is made), considering the exhibit would be appropriate only if it is "concededly authentic" and "central to the plaintiff's claim." *See Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002). Neither of those conditions is met here. Chicago Faucet disputes the authenticity of the contract, *see* Mem., Dkt. #25 at 13, and it cannot be said that the terms of the purchase agreement contract are "central" to plaintiff's fraud claims. *See id.* (terms of contract would be "central" in a suit for breach of contract). The plaintiff alleges that it would not have purchased of the water at all if it had known the source. Therefore, the Court does not consider Exhibit C.

That does not change the result, though. Under Illinois law, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." 810 ILCS 5/2-204. Here, there is no dispute that Chicago Faucet placed a telephone order for the five-gallon bottled water, and that the defendant delivered the goods, which the plaintiff accepted and consumed, and billed plaintiff with monthly invoices. Compl., Dkt. #1, ¶36, 37. This course of conduct is sufficient to show agreement. *See Jannusch v. Naffziger*, 883 N.E. 2d 711, 716 (Ill. App. Ct. 2008) ("The conduct in this case is clear. Parties discussing the sale of goods do not transfer those goods and allow them to be retained for a substantial period before reaching agreement."). Even if the Court disregards Exhibit C, then, it is still clear from the parties' conduct as described in the complaint alone that there was a contractual relationship governing the sale of goods—the precise terms of

which are not relevant at this point. Therefore, Chicago Faucet cannot bring an unjust enrichment claim unless the claim falls outside of the contract.

"In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim," *Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.3d 683, 687 (7th Cir. 2004), and restitution – the damage for unjust enrichment claims – is not available for a party whose "expectations were not realized under the contract." *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 686 (7th Cir. 2013), citing *Utility*, 383 F.3d at 689. Here Chicago Faucet claims that the defendant was unjustly enriched because customers overpaid for its product due to its misrepresentation of the source of the five-gallon bottled water, and therefore it is unjust for the defendant to retain those proceeds. The claim is squarely within the subject matter of the parties' contractual relationship governing the purchase and sale of the bottled water. Unjust enrichment is therefore not an appropriate theory of relief for the plaintiff.

This result is further compelled by the absence of a valid fraud claim—at least as the complaint is pleaded currently. The facts that make the Nestlé Water's enrichment "unjust" are the same fraudulent omissions and misrepresentations that support the ICFA claim. As discussed, that claim is largely preempted and otherwise is insufficiently pleaded. Under these circumstances, where there is not a viable claim of fraud, the unjust enrichment claim cannot stand either. *Cleary v. Philip Morris Incorporated*, 656 F.3d 511, 517-18 (7th Cir. 2011) ("So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010);

*Oshana v. Coca–Cola Co.*, 472 F.3d 506, 515 (7th Cir. 2006). Therefore, absent a plausible fraud claim, the unjust enrichment claim could not survive even without a governing contract.

* * *

The defendant's motion to dismiss is granted, and the complaint is dismissed without prejudice. Any amended pleading, however, may not premise liability on Nestlé Waters' failure to disclose the source of the water that plaintiff purchased. The plaintiff is free to assert any other theories that are consistent with this decision.

Date: February 11, 2014

John J. Tharp, Jr.
United States District Judge